IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IKEABA V. WAL-MART ASSOCIATES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JUDEMARKARBAR IKEABA, APPELLANT,

V.

WAL-MART ASSOCIATES, INC., APPELLEE.

Filed January 28, 2025.    No. A-24-339.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Jon Rehm, of Rehm Law Firm, P.C., L.L.O., for appellant.

Jennifer S. Caswell, of Caswell, Panko & Westerhold, L.L.C., for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Judemarkarbar Ikeaba appeals from a workers' compensation award which determined that he sustained only a left ankle sprain arising out of and in the course of his employment with Wal-Mart Associates, Inc. (Walmart). Ikeaba claims that the compensation court should have determined that he also sustained work injuries to his right knee, hip, and lower back, and that he was entitled to additional medical expenses, future medical expenses, temporary total disability benefits, and permanent partial disability benefits. We affirm.

## II. BACKGROUND

### 1. INJURY AND CLAIM

On November 16, 2022, Ikeaba filed a petition in the Workers' Compensation Court seeking compensation for injuries sustained in the course of his employment with Walmart on

August 27 and September 12, 2021. He claimed injuries to both of his ankles and his back. Ikeaba sought temporary disability benefits, permanent disability benefits, payment of medical expenses, vocational rehabilitation benefits, waiting time penalties, attorney fees, and interest. In its answer, Walmart admitted that Ikeaba was in its employ on August 27 and September 12, but it denied his remaining allegations. Walmart alleged that if Ikeaba suffered any disability, it was not the result of or attributable to any accident arising out of or in the course of his employment with Walmart. Walmart further alleged that it had made voluntary payment to or on behalf of Ikeaba for all medical, surgical, and hospital expenses and all compensation benefits to which he may be entitled or for which it may be liable.

The parties' joint pretrial statement (exhibit 21) filed on December 5, 2023, reflects Ikeaba's allegation that "he injured his right ankle on or about August 27, 2021, from an ankle twist and that he developed pain in his left ankle, right knee, and low back that was causally-related to the initial ankle injury." Walmart's position was that there was no accident on either August 27 or September 12, and "at most," Ikeaba sustained a right ankle sprain that was not permanent.

## 2. TRIAL

Trial was held by video conference on January 12, 2024. Ikeaba was the only witness to testify. Numerous exhibits were received into evidence.

### (a) Ikeaba's Testimony

Ikeaba testified that he moved to the United States from Nigeria in May 2019. He was 40 years old at the time of trial. After moving to North Platte, Nebraska, he began working at the Walmart distribution center. His job as an order filler entailed "picking 1,900 to 2,000 cases of product on a 12-hour shift"; the cases weighed 10 to 75 pounds each. He also had to lift empty pallets that weighed 75 pounds or more.

On August 27, 2021, Ikeaba "accidentally stepped on the shrink wrap, the transparent waterproof used in wrapping products." He said he tried to find his balance by grabbing the shelf poles; he "didn't fall to the ground," but his "right foot, up [his] right leg" "felt sore." Ikeaba reported it to his "coach" and asked to go home, but the next day the pain continued. He said he took some "protected paid time off," but could not remember how much time he took off. When he returned, he did not go on light or alternate duty.

On September 12, 2021, Ikeaba "could no longer walk normally with [his] right leg" and "was limping," and he was using his "left leg to now pull pallets." While pulling a pallet he "miscalculated the strength [he] needed to use" and injured his left ankle. He told his coach he thought he was injured and needed to see a doctor. Ikeaba went to the hospital room at the distribution center, and then his supervisor told him that he did not need to go to the doctor and that he should go home and apply ice and heat. At home, Ikeaba's pain increased, and he subsequently went to the doctor. The doctor referred him to a foot and ankle specialist. Ikeaba said that he was advised not to lift anything above 10 pounds and to stay off work until his next appointment; however, Walmart asked him to come to work the following day and gave him "light-duty," but he still felt pain. Ikeaba was terminated on October 12 for unrelated reasons.

After his employment with Walmart was terminated, Ikeaba continued to get treatment for his pain. He went to physical therapy, went to all of his doctors' appointments, and "abstained

from whatever . . . triggers the pain" e.g., movement. The treatment "helped." He was eventually referred to doctors who treated his right knee, right hip, and right lower back; those doctors included Dr. Stephanie Marcy (an anesthesiologist) and Dr. Evan Correll (an orthopedic surgeon). Medications prescribed by Dr. Marcy made him feel better. Ikeaba also received injections in his knee, but they only made him feel better for 8 hours, and injections in his back helped "[a]fter two months." When the injections wore off, Ikeaba "learned not to stress [his] body" and tried to avoid "[t]rekking long distance, jumping, jogging, skipping, or trying to . . . climb stairs," and he did not lift anything more than 10 pounds.

Ikeaba moved to Texas in August 2022 and did "gig work" for ride-share companies. He did not have any medical treatment in Texas until he was in a car accident on March 8, 2023. When asked if the impact from the car accident made his Walmart injuries worse, Ikeaba replied, "Yes." The "impact awakened . . . what I was managing." He also injured his neck and upper back in the car accident. When asked if he had now returned to the same physical condition that he was in before the March 8 accident, Ikeaba replied, "Yes."

Ikeaba said that the moment he puts weight on his body "[he is] triggering the pain," so he cannot carry his children. He also cannot lift things, stand for a long time, or bend.

### (b) Medical Records

Ikeaba submitted his medical records into evidence as exhibit 1 and said that the records contained their "experts opining on causation." We summarize those records as follows.

Ikeaba went to the emergency department on the night of September 12, 2021. The physician assistant noted,

> [Ikeaba] presents to the emergency department with complaints of pain to his bilateral ankles. He works at Walmart distribution center. He states about 2 weeks ago he started having pain in his right ankle. Seems that he goes to work and after is [sic] been on his feet for about 3 or 4 hours he starts to have pain in his ankles. . . . He does a lot of heavy lifting and moving pallets. He states he has been using his left side since his right ankle has been hurting. Uses his left leg a lot more for the heavy movement. Now he is having pain in his left ankle in the similar areas. . . . He denies any trauma to the area.

X-rays of Ikeaba's ankles showed no fractures or dislocations. The physician assistant wrote, "I think he has more of an overuse issue without wearing proper shoes"; he was referred to podiatry for further evaluation and treatment of his pain.

Dr. Richard Raska (podiatrist) saw Ikeaba on September 13, 2021. He noted that Ikeaba presented with complaints of bilateral ankle pain, with the right ankle pain starting on August 27, and the left ankle pain starting on September 12. "Patient states that he is on his feet for longer periods of time and has pain. States that he is getting pain in his feet and his legs are starting to hurt." "States that due to his right ankle hurting he has been putting more weight and pressure on his left ankle." Dr. Raska completed a "Physician Work Status Report" stating that Ikeaba could return to work with some restrictions regarding the number of hours per day he could do certain postures and motions. Ikeaba was given an ankle brace for his right ankle and an MRI was ordered. The MRI showed a mild sprain and advanced degenerative changes. Ikeaba followed up with Dr. Raska on September 30. Dr. Raska stated, "Patient states that when he stands up he starting [sic]

having discomfort right away. States that right ankle is doing ok in the morning, . . . all day walking hurts him. . . . The more he walks it hurts his . . . knee and into his hip." Dr. Raska reviewed the MRI results and diagnosed Ikeaba with "[c]hronic pain of both ankles," "[s]prain of anterior talofibular ligament of right ankle, subsequent encounter," and "[a]rthritis of right subtalar joint." Ikeaba was to follow up with Dr. Dustin Christensen (podiatrist).

Dr. Christensen saw Ikeaba for a second opinion on October 12, 2021. Dr. Christensen noted that Ikeaba reported that "[t]he last week or so his pain has started radiating up to his hip versus stopping at his knee, however the left ankle is only radiating to his knee." Dr. Christensen diagnosed Ikeaba with left and right ankle sprains and "[a]rthritis of right subtalar joint." Dr. Christensen stated that a

> [l]engthy, detailed discussion was had with [Ikeaba] today regarding changes seen clinically and on MRI. Is explained in great detail to [him] that with history of sprain of both ankles at work that soft tissue injury . . . is likely related to work-related injury. However, I discussed with [him] that subtalar joint degenerative change cannot be definitively linked to any work-related injury.

Physical therapy was recommended. At an appointment on November 16, Ikeaba reported that he felt better when he limited his physical activity and that when he was on his feet too much he got pain in his knees, hips, and lower back. A corticosteroid injection was administered to the right ankle and Ikeaba was to continue with physical therapy. Dr. Christensen saw Ikeaba again on November 30 and stated that he reported the previous injection "helped him for about a day." Dr. Christensen documented that Ikeaba "has shown persistent, however, slow improvement regarding pain to bilateral ankles, left is improving quicker than right." He was to continue with physical therapy.

Two days later, on December 2, 2021, Ikeaba saw Cheryl Hunt, APRN, for a "Commercial Driver Medical Examination." She documented that Ikeaba

> [p]resents today for a commercial driver fitness determination physical exam. The patient reports no problems.
>
> The following portions of the patient's history were reviewed and updated as appropriate: allergies, current medications, past family history, past medical history, past social history, and past surgical history.

Hunt stated that Ikeaba was "[c]leared for 2 year license without restrictions." We note that on cross-examination, Ikeaba confirmed that he tried to get his commercial driver's license in Nebraska in December 2021. When asked if he reported to the provider at that time that he was having no physical problems, Ikeaba responded, "She only examined me. She didn't ask me questions." When asked if he was cleared for a 2-year commercial driver's license in December 2021, he replied, "No."

On December 16, 2021, Ikeaba was seen in the emergency department. The physician assistant noted that he presented

> with intermittent low back pain that has been ongoing for the past 3-4 months and started shortly after injuring his right ankle at work at Wal-Mart. He reports pain across the low back which radiates into the right groin, thigh and knee. . . . [He] has been following with

Podiatry for his ankle injury through workman's comp and has been getting PT. He believes his back pain is related to his ankle injury, as his gait has been altered for several months since his initial injury and he has had to compensate by walking differently. He denies any prior h/o back problems and no specific known back injury. He has tried talking to his podiatrist about his back issues, but voices frustration that the podiatrist does not seem interested in addressing them. . . . He reports not being able to work because of his pain, and states he is not getting any better and is concerned. He can only be on his feet for a short time before his pain is unbearable and shoots down his right leg.

He was recommended ibuprofen and other medication, but "he is insistent on not taking any pills." He did agree to injections "for some temporary relief." It was recommended he establish care with a primary care provider and was told he may benefit from following up with a spine specialist or the pain clinic.

Ikeaba saw Dr. Jon Swanson (family medicine) on December 23, 2021, for an "emergency room follow up after being seen for lumbar back pain with right sided sciatica." Dr. Swanson noted that Ikeaba "states that the pain radiates from his right knee to his hip and groin," and "[a]t times, the pain radiates clear to his ankle." "He has struggled with this pain for the last three to four months and it occurred after a right ankle injury he sustained while working at the Wal-Mart Distribution Center." Dr. Swanson "[s]uspect[ed] mild degenerative disc disease of the lower thoracic spine."

Ikeaba returned to Dr. Christensen on December 29, 2021, with "worsening concerns of pain to his right knee, hip, and to lower back" and said he "has not seen any improvement to this area with physical therapy." Ikeaba "state[d] that multiple corticosteroid injections have also not alleviated all symptoms related to right ankle." Dr. Christensen recommended that Ikeaba see an orthopedic specialist.

Ikeaba saw Aaron Peterson, PA, with GPH Orthopaedics, on January 7, 2022. Peterson documented the following history:

[Ikeaba] suffered an injury at the Walmart distributing center at the end of August where he slipped on a piece of packaging and subsequently caught himself before falling however he sustained an ankle sprain which is what he initially noticed. In the weeks afterwards he began to notice pain encompassing the entirety of his right lower extremity from his right lumbar area down to his ankle. He states the pain starts in his right lumbar muscles and shoots down the lateral aspect of his hip and thigh before going down his anterior shin to his feet. He states there is numbness and tingling associated with this however this is intermittent. He states the pain is most severe in his lumbar spine and his ankle.

(This was the first medical record in exhibit 1 that noted how Ikeaba hurt his ankle, i.e., slipped on a piece of packaging.) Peterson stated that Ikeaba "does have some complex symptoms in his lower extremity which may be [the] result of multiple issues." "I did explain to [Ikeaba] that radicular symptoms can cause issues with the entire lower extremity from back to foot and that while he did suffer an ankle sprain I believe his lumbar pain may be the source of most of his ailments." After lumber and ankle MRIs, Ikeaba was referred to pain management.

Ikeaba saw Dr. Correll (orthopaedic surgeon) on February 24, 2022, for an evaluation of his right knee. Dr. Correll reviewed his history and MRI imaging and found that no surgical treatment was required. It was recommended that he work with physical therapy "for his lumbar spine hip and knee as well as his ankle."

On March 23, 2022, Dr. Marcy (anesthesiologist), noted that Ikeaba stated that he had initial ankle pain that was the worst but that the pain did radiate up his "RLE" and low back, which is why she recommended additional testing.

Ikeaba saw Dr. Correll on April 7, 2022; the primary complaint was right knee pain. Dr. Correll noted that "[h]e had several questions regarding causation today." Dr. Correll stated "his symptoms began after the injury on August 27," and "I do believe that his right lower extremity pain symptoms are related to his work on August 27."

On May 5, 2022, Dr. Marcy administered a lumbar interlaminar epidural steroid injection to Ikeaba.

Dr. Correll administered a right knee steroid injection on May 26, 2022. On June 23, Dr. Correll noted that Ikeaba had right-sided lumbar radiculopathy, right knee patellar tendinitis with associated history of Osgood Slaughter disease and degenerative meniscus tearing, and a history of a right ankle sprain with underlying midfoot degenerative changes and pes planovalgus deformity. Dr. Correll believed that Ikeaba had reached maximum medical improvement for his right knee and Dr. Correll had no further interventions planned for him. "He does have some residual pain and limitations but is difficult to know how much of this is coming from his ankle as well as his low back radiculopathy. My recommendation would be to have an independent medical evaluation for determination of causation, residual limitations, restrictions, and impairments."

On July 11, 2022, Ikeaba was seen by Dr. Wayne Warren at the request of Dr. Marcy. Dr. Warren noted that

> [Ikeaba] said he was hurt while working at the Walmart distribution center, and initially also had an injury to his right ankle and knee. He has improved significantly with pain management, but has not done any physical therapy for his back. He says he experiences discomfort from about the upper lumbar spine down to his sacrum, but the pain does not really radiate into his legs at all. He is not falling, and denies bowel or bladder difficulties. He has not been working since October of last year.

Dr. Warren stated:

> [Ikeaba] does not have surgical pathology in his back. In fact, I feel that the radiology report overstates the degree of his extremely mild age-related typical degenerative changes. There is no evidence of traumatic injury here . . . . He will continue with pain management, and I think he would also benefit from physical therapy, but he certainly does not require neurosurgical follow-up.

In addition to the medical records in exhibit 1, medical records from Texas were also received into evidence. An examination report from Houston Healing Chiropractic on March 20, 2023, states that "[Ikeaba] reports that the following symptoms of pain have occurred since his motor vehicle collision [on March 8]: cervical, thoracic and lumbar pain," "he also has pain in right hip and right knee and has been experiencing headaches since the accident"; "He reports that

these pain symptoms did not occur prior to his motor vehicle accident and he reports that there were no major complaints related to his health."

(c) Independent Medical Examination

Dr. R. David Bauer conducted an independent medical examination of Ikeaba on August 10, 2023. Dr. Bauer noted that Ikeaba was "very evasive answering questions." He concluded:

> On the initial date of injury, August 27, 2021, Mr. Ikeaba stated [sic] his right ankle. This is the ONLY objective injury that occurred as a result of any occupational exposure or injury. The objective imaging obtained on September 28, 2021, showed a minor strain/sprain of the anterior tibiofibular ligament and extensor retinaculum. These ligaments were stretched, but not torn according to the MRI. This type of condition is short-lived, and does not create ongoing subjective pain complaints. There is no evidence of any permanent harm or change to the structure of the body, or anything that would be considered to be an injury beyond this condition.
>
> Unrelated to injury, Mr. Ikeaba [h]as arthritis in his foot. . . . The imaging also shows advanced degenerative changes in the subtalar, talonavicular and first tarsometatarsal joint-these joints were not injured in the inversion incident that is asserted to have occurred. . . .
>
> The findings on the MRI of the knee are degenerative, and not secondary to any incident. . . . The meniscal tear is a reflection of the arthritis, and is not the result the incident in question.
>
> The described injury to the right ankle would not create symptoms that radiate from the foot to the back or buttock. The imaging of the lumbar spine is essentially normal, with no evidence of nerve compression, or significant arthritis. There is no objective explanation for any condition that required invasive care as a result of either the August 27, 2021, incident, or the asserted incident of September 12, 2021. The ongoing subjective complaints that Mr. Ikeaba asserts occurred from the injury are not due to any physiologic source. Although he has subjective complaints in his back, they are not consistent with "injury."
>
> The findings on the lumbar imaging are chronic and degenerative. These MRI findings can be found in asymptomatic individuals and are not necessarily correlated with the claimant's pain. These MRI findings are not caused by, aggravated by or accelerated by the events of injury.

Dr. Bauer stated that Ikeaba's ankle strain "would have stabilized and fully recovered" by the time he was seen in the emergency department on December 16, 2021, for complaints unrelated to either of the incidents at Walmart; "no further treatment is necessary." Dr. Bauer noted that Ikeaba's "history appears to change depending upon who is asking the questions and which claim is in question." "If one believes that history in the medical records, then the car accident [on] March 9, 2023 [sic] is more likely than not an intervening cause of his symptoms. On a more probable than not basis, the incidence asserted by the associate to have occurred during his employment at Walmart are NOT the source of his ongoing subjective pain complaints."

- 7 -

### 3. COMPENSATION COURT AWARD

The compensation court issued its award on April 1, 2024. The court found that on September 12, 2021, Ikeaba sustained a left ankle sprain arising out of and in the course of his employment with Walmart, and that he was entitled to worker's compensation benefits. It noted that Ikeaba first reported problems with his ankles on September 12, the day he went to the emergency room, and although he did not mention any specific injury that day, he did have objective signs of a left ankle sprain at that time. Ikeaba also completed an incident report stating that he injured his left ankle, but did not discuss a right ankle injury. The court further found that Ikeaba "did not sustain any permanent injury or limitation because of the work injury"; "the ankle sprain resolved, and Ikeaba reached [maximum medical improvement] on December 2, 2021, the date of his CDL examination." The court ordered Walmart to pay for medical expenses in exhibits 4 and 8 for treatment between September 12 and December 2; Walmart was not responsible for any medical expenses incurred after December 2, nor was it liable for payment of Ikeaba's treatment with Hunt on December 2. The court found that Ikeaba was not entitled to future medical care, any temporary disability benefits, any permanent partial disability benefits, or vocational rehabilitation benefits.

The compensation court "reject[ed] the opinions and comments of Marcy and the other medical providers . . . insinuating [Ikeaba's] pain and discomfort in his right knee, lower back, and right ankle are related to a work injury"; the court also rejected Dr. Bauer's opinion that Ikeaba suffered a right ankle injury in August 2021.

Ikeaba appeals.

## III. ASSIGNMENTS OF ERROR

Ikeaba assigns that the compensation court erred in (1) finding that he did not injure his right knee, hip, and lower back arising out of and in the course and scope of his employment, (2) failing to award future medical expenses, (3) finding that he reached maximum medical improvement in December 2021 and by not awarding medical expenses incurred after that date, (4) not awarding him temporary total disability benefits from October 12, 2021, to May 26, 2022, and (5) not awarding him permanent partial disability benefits.

## IV. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024).

On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the

appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

## V. ANALYSIS

### 1. INJURY

Ikeaba argues that the trial court erred by finding he sustained no injury arising from his employment with Walmart and by failing to assign weight to his testimony or the "medical evidence's implication that [he] very well may have suffered an aggravation of an overuse injury arising from and occurring in the scope of employment." Brief for appellant at 10. Because the compensation court did find that Ikeaba sustained a left ankle sprain, we will assume that Ikeaba's argument was meant to align with his assignment of error, and that his focus is on the court's finding that he did not sustain an injury to his right knee, hip, and lower back arising out of and in the course and scope of his employment.

In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by the greater weight of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act. *Prinz v. Omaha Operations, supra*. If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id.* The determination of causation is ordinarily a matter for the trier of fact. *Id.* Moreover, it is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. *Id.* Importantly, an appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Id.* The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Id.*

At trial, Ikeaba submitted his medical records into evidence as exhibit 1 and said that the records contained their "experts opining on causation." In the compensation court's award, it noted that the medical records contained in exhibit 1 "are befuddling and confusing, at best." The court stated:

> There are multiple entries of repeated medical information with various dates, authors, and headnotes of treatment that oftentimes do not correlate. The perplexing nature of Exhibit 1 impacted the persuasive value of the information contained therein as the Court had difficulty discerning the author of many of the office notations.

The court further stated that "it is extremely challenging to discern any coherent medical opinions from the records in Exhibit 1," and "[t]his task is not made easier by the shifting patchwork of histories provided by [Ikeaba]." The court found Dr. Bauer's "extensive and exhaustive history" of Ikeaba's medical records useful to understanding the treatment provided.

The compensation court found that Ikeaba first reported problems in his ankles on September 12, 2021, the day he went to the emergency room; "[s]urprisingly, [Ikeaba] makes no mention of hurting his left ankle while moving the wooden pallet" and "[i]nstead the medical history indicates [he] described that the pain in his ankles begins after he is on his feet for a few

hours." That said, Ikeaba completed an associate incident report stating that he injured his left ankle.

The compensation court also stated,

It is significant that [Ikeaba] initially told his medical providers that the pain in his ankles began because he was on his feet numerous hours a day. He did not mention any specific work accident that caused pain in his ankles. There are other references in the medical records indicating that [Ikeaba] will, at times, exaggerate his pain symptoms, and will anecdotally relate all his pain complaints to his ankle sprain. However, there are no objective tests confirming [Ikeaba's] suspicion that the pain in his lumbar spine, right knee, and right ankle are related to his left ankle sprain. In the end, the state of the medical evidence simply does not allow this fact finder to adopt [Ikeaba's] theory of the case given the failure to persuade the fact finder on the issue of causation of [his] alleged injuries to his lumbar spine, right knee, and right ankle.

Given that the medical records were less than clear, and Ikeaba's reported history changed over time, we cannot say that the compensation court's findings were clearly wrong. When viewing the evidence in a light most favorable to Walmart, the court did not clearly err in finding that Ikeaba sustained only a left ankle injury arising out of and in the course of his employment with Walmart.

## 2. Maximum Medical Improvement and Future Medical expenses

Ikeaba argues that the compensation court erred in finding that he reached maximum medical improvement in December 2021, and in subsequently failing to award him medical expenses incurred after that date and future medical expenses. However, because the compensation court determined that Ikeaba did not sustain any injuries other than a left ankle sprain as a result of the accident on September 12, 2021, our analysis is limited to that ankle. The compensation court found that the "medical records confirm that [Ikeaba's] left ankle steadily improved during the fall of 2021." "By December 2, 2021, the pain in [Ikeaba's] ankle diminished to minor pain, and [he] confidently reported no physical problems to Hunt." The court found that Ikeaba reached maximum medical improvement on December 2. Additionally, the court noted that Dr. Bauer determined that Ikeaba did not need further treatment. The factual findings by the compensation court were not clearly wrong. Because Ikeaba reached maximum medical improvement on December 2 and no further treatment was needed, he was not entitled to medical expenses after that date, including future medical expenses. See *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016) (award of future medical expenses requires explicit evidence that future medical treatment is reasonably necessary to relieve injured worker from effects of work-related injury).

## 3. Temporary and Permanent Disability Benefits

Ikeaba argues that the compensation court erred in failing to award indemnity benefits of any kind. He claims that by the court's own admission, from October 12, 2021, to December 2021, Ikeaba was suffering from the symptoms of his workplace ankle injury. Ikeaba claims that those

symptoms left him unable to work and that he was at least temporarily disabled during that time. He further claims that he continues to face difficulties walking or standing that make it challenging to attain and maintain employment and thus the trial court erred in failing to award disability benefits on a permanent basis.

Ikeaba did suffer from a work-related left ankle sprain during the fall of 2021, but he was terminated from his employment on October 12 for reasons unrelated to his work injury. The court found that Ikeaba was not temporarily totally disabled from the time he was dismissed from his employment with Walmart until he reached maximum medical improvement on December 2. As noted by the compensation court, "there are no persuasive medical records indicating [Ikeaba] could not return to work because of his left ankle sprain," "[a]lthough [he] no longer worked for [Walmart] he was still 100 percent employable." See *Tchikobava v. Albatross Express, supra* (temporary disability is period during which employee is submitting to treatment, is convalescing, is suffering from injury, and is unable to work because of accident).

There was also no evidence beyond Ikeaba's own testimony that he suffered from a permanent disability. The compensation court chose not to give weight to that testimony, as was its prerogative. Additionally, no medical provider opined that Ikeaba sustained a permanent disability due to a work injury.

We find that the compensation court correctly determined that Ikeaba was not entitled to temporary or permanent disability benefits.

## VI. CONCLUSION

For the reasons stated above, we affirm the compensation court's April 1, 2024, award.

AFFIRMED.