Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/27/2024 09:14 AM CDT

Jennifer Prinz, appellee, v. Omaha Operations LLC,
doing business as Emerald Nursing &
Rehab Omaha, appellant.

___ N.W.3d ___

Filed September 27, 2024.    No. S-23-994.

1. **Appeal and Error.** As a threshold matter, an appellate court must determine what assignments of error were properly raised and argued on appeal.

2. **Rules of the Supreme Court: Appeal and Error.** The cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts.

3. ____: ____. When a brief of an appellee fails to present a proper cross-appeal pursuant to Neb. Ct. R. App. P. § 2-109 (rev. 2023), an appellate court declines to consider its merits.

4. **Workers' Compensation: Appeal and Error.** An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

5. ____: ____. On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

6. **Workers' Compensation: Judgments: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

7. **Workers' Compensation: Proof.** In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by the greater weight of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.

8. **Workers' Compensation: Evidence: Appeal and Error.** Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

9. **Expert Witnesses.** Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture.

10. **Trial: Expert Witnesses.** It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question.

11. **Expert Witnesses: Appeal and Error.** An appellate court is not a superexpert and will not lay down categorically which factors and principles an expert may or may not consider; such matters go to the weight and credibility of the opinion itself and not to its admissibility.

12. **Workers' Compensation: Expert Witnesses: Physicians and Surgeons.** The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony.

13. **Trial: Expert Witnesses.** An objection to the opinion of an expert based upon the lack of certainty in the opinion is an objection based upon relevance and not upon foundation.

14. **Workers' Compensation: Expert Witnesses.** If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.

15. **____: ____.** Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment.

16. **Workers' Compensation: Evidence: Expert Witnesses.** Expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court.

17. **Trial: Proximate Cause.** The determination of causation is ordinarily a matter for the trier of fact.

18. **Workers' Compensation: Expert Witnesses.** It is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe.

19. **Expert Witnesses: Physicians and Surgeons: Appeal and Error.** An appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole.

20. **Workers' Compensation: Evidence: Appeal and Error.** If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

21. **Workers' Compensation.** A workers' compensation award cannot be based on mere possibility or speculation.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Kaitlyn J. Coenen, of Prentiss Grant, L.L.C., for appellant.

Staci Hartman-Nelson, of Hartman-Nelson Law Office, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

An employer appeals from a workers' compensation award, in which the compensation court made detailed factual findings and awarded Jennifer Prinz indemnity benefits, past medical expenses, and future medical care. As a matter of first impression, we consider Prinz' medical expert's use of the word "associated" when opining on the causal connection between the alleged work accident and her injury. On this record, we see no clear error in the compensation court's finding that Prinz suffered from an injury proximately caused by a work accident. We affirm the compensation court's judgment.

## II. BACKGROUND

### 1. Work Accident and Prinz' Injury

These facts are generally recited from the compensation court's award. Prinz was hired as a housekeeper for Omaha Operations LLC, doing business as Emerald Nursing & Rehab Omaha (Emerald), in late February 2020, shortly before the onset of the COVID-19 pandemic. At some point, Emerald put in place safety protocols to help control the spread of COVID-19.

On July 17, 2020, Prinz learned that she was required to wear an "N95 mask" during her shift and that Emerald had acquired an ultraviolet "sterilizer machine" that cleaned used N95 masks so they could be reused by Emerald's employees. When Prinz retrieved an N95 mask from the sterilizer machine and placed it on her face, she felt a "burning sensation" and then had difficulty breathing. Another employee called an ambulance, which transported Prinz to a hospital. Prinz worked her final shift for Emerald the next day.

Three days later, Prinz sought treatment from a family care physician, Dr. Derek Marshall. She continued to see Marshall at followup appointments for persistent respiratory issues. Prinz also sought treatment from a pulmonologist, who ultimately diagnosed her with "moderate persistent asthma."

### 2. Petition

Prinz filed a petition in the Workers' Compensation Court against Emerald, claiming she suffered an injury from an accident on July 17, 2020, arising out of and in the course of her employment. Prinz requested payment of medical expenses and of temporary total disability benefits, a determination of loss of earning capacity, and entitlement to permanent partial disability benefits, vocational rehabilitation benefits, and penalties, interest, and attorney fees.

Emerald filed an answer admitting that it employed Prinz on July 17, 2020, but it denied that the alleged work accident

or injury occurred, that Prinz suffered an injury related to her work, and that Prinz was disabled to the extent she claimed.

### 3. Trial Evidence

More than 3 years after the mask incident, the compensation court held a 2-day trial. The only witnesses to testify were Prinz and her former supervisor at Emerald. The court also received medical evidence. Pursuant to our standard of review, this summary is recited in the light most favorable to Prinz.

Prinz presented evidence that her persistent respiratory issues were caused by the alleged work accident. The court received the medical records of both of Prinz' treating physicians, which described numerous objective tests performed on her. Marshall first examined Prinz 3 days after the incident. He then saw her for several followup appointments regarding her respiratory problems.

Pursuant to a request from Prinz' counsel, Marshall authored a report summarizing his evaluations of Prinz and providing his opinion in this case. Marshall opined, in pertinent part:

> [Prinz] did not have any known or documented respiratory conditions prior to the onset of her symptoms [on] July 17, 2020. Therefore, it was not an aggravation of any known previous respiratory issues. She reported to me that her respiratory issues (now known to be asthma) started immediately after putting on a reused UV-treated N95 mask. There is no readily available test that can show causality between the exposure and her respiratory issues. However, I think there is reasonable degree of medical certainty that the two are associated as there were no other triggers identified.

The pulmonologist first evaluated Prinz approximately 6 weeks after the incident on a referral from Marshall. Because of the time that had passed since the incident, the pulmonologist declined to opine on the cause of her respiratory issues. But the pulmonologist opined "there was a change in [Prinz'] condition" on July 17, 2020, and he generally agreed with Marshall that her symptoms started on that day.

Prinz testified that she had suffered from respiratory issues since the incident on July 17, 2020. She also testified that prior to the incident, she had no respiratory problems. Other than a handful of unrelated doctor visits, there is no evidence that Prinz received medical treatment from 2017 to 2020.

Although Emerald denied any causal connection between the incident and Prinz' respiratory issues, it did not present expert opinion evidence identifying a different source of Prinz' symptoms or stating that her respiratory issues were not caused by the alleged work accident. Instead, Emerald posited that Prinz had a history of "breathing problems" and that her account of the events on July 17, 2020, was inaccurate.

## 4. COMPENSATION COURT'S AWARD

The compensation court entered a written award finding that on July 17, 2020, Prinz suffered an injury to her respiratory system in an accident arising out of and in the course of her employment with Emerald. The court awarded Prinz temporary total and permanent partial disability benefits, past medical expenses, and future medical care.

In the award, the compensation court expressly acknowledged the parties' disagreement regarding whether Prinz' respiratory issues were caused by the July 17, 2020, incident. But, after stating that it had carefully reviewed all of the evidence, it concluded the evidence supported a finding of causation. In particular, the compensation court found Prinz had no preexisting history of respiratory problems before the July 17 work accident. Moreover, it found Marshall's opinion "both legally sufficient and persuasive given the timing of the events and the objective evidence that something happened to [Prinz] on July 17, 2020." In making that finding, the court rejected Emerald's contention that Marshall's opinion lacked foundation. The court also noted consistencies in the pulmonologist's statements and the absence of a contrary medical opinion. Finally, the compensation court found Prinz' testimony credible and supported by the objective tests in evidence.

In determining the amount of the award, the compensation court found that Prinz sustained a 30-percent loss of earning capacity. In analyzing the issue, the court "reviewed in detail [Prinz'] testimony regarding her abilities and limitations, . . . Marshall's restrictions, and the four factors used to determine a loss of earning capacity" as set forth in our case law.

Emerald filed a timely appeal, which we moved to our docket,[1] and Prinz filed a purported cross-appeal.

## III. ASSIGNMENTS OF ERROR

Emerald assigns, consolidated and renumbered, that the compensation court erred in (1) finding Prinz suffered an injury to her respiratory system in an accident arising out of and in the course of her employment and (2) finding Prinz sustained a 30-percent loss of earning capacity.

[1-3] Prinz attempted to raise a cross-appeal challenging certain determinations of the compensation court, but she failed to separately assign errors as the basis for the purported cross-appeal. As a threshold matter, an appellate court must determine what assignments of error were properly raised and argued on appeal.[2] Pursuant to Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2023), the cross-appeal section of an appellate brief must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts.[3] Although Prinz' brief contains at least one subheading purporting to assign error, such subheadings do not satisfy the requirements of our appellate rules.[4] When a brief of an appellee fails to present a proper

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[2] *Fentress v. Westin, Inc.*, 304 Neb. 619, 935 N.W.2d 911 (2019).

[3] *Id.*

[4] See § 2-109(D)(1). See, also, *Fentress v. Westin, Inc., supra* note 2, 304 Neb. at 627, 935 N.W.2d at 920 (subheading in brief on cross-appeal was "not an acceptable substitute for a proper assignment of error").

cross-appeal pursuant to § 2-109, an appellate court declines to consider its merits.[5] We do not address it further.

## IV. STANDARD OF REVIEW

[4] An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.[6]

[5,6] On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.[7] In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.[8]

## V. ANALYSIS

### 1. Proof of Causation

[7] Emerald's primary contention is that the compensation court erred in finding that Marshall's opinion as to causation had sufficient foundation and in relying on it to find that Prinz' injury was causally connected to her employment. The causal connection is important because it is an element of

---

[5] *Fentress v. Westin, Inc., supra* note 2.

[6] See Neb. Rev. Stat. § 48-185 (Reissue 2021). See, also, *Mosher v. Whole Foods Market, ante* p. 26, 8 N.W.3d 733 (2024).

[7] *Spratt v. Crete Carrier Corp.*, 311 Neb. 262, 971 N.W.2d 335 (2022).

[8] *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020).

Prinz' claim. In order to recover under the Nebraska Workers' Compensation Act, a claimant has the burden of proving by the greater weight of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.[9]

In the next sections, we first address Emerald's arguments attacking the foundation for Marshall's opinion. We then consider the sufficiency of the evidence to support the compensation court's finding of causation.

### (a) Purported Lack of Foundation for Marshall's Opinion

[8-10] Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.[10] Expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture.[11] It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his or her opinion about an issue in question.[12]

In the first of three arguments, Emerald contends that Marshall's opinion lacked foundation because he disregarded Prinz' previous history of "breathing problems."[13] Emerald highlights medical records pertaining to a single doctor visit in November 2017 and an unrelated doctor visit in January 2020 that were received in evidence. The appellate record

---

[9] See *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 131 (2017).

[10] *Fentress v. Westin, Inc., supra* note 2.

[11] *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

[12] *McGill Restoration v. Lion Place Condo. Assn.*, 309 Neb. 202, 959 N.W.2d 251 (2021); *Hynes v. Good Samaritan Hosp., supra* note 11.

[13] Brief for appellant at 13.

provides no indication that Marshall possessed or considered those records in forming his opinion. Nonetheless, this argument lacks merit.

We have previously recognized that there may be instances where a medical expert is not aware of the claimant's entire history, yet there is foundation for the expert's opinion. In one case,[14] the claimant asserted she suffered a work-related injury and offered into evidence a report from an expert witness who opined as to the causation and extent of the claimant's psychological injuries. The employer sought to exclude the expert's opinions for lack of foundation because the claimant was allegedly untruthful about her personal and psychological history during her interview with the expert.

[11] On appeal in that case, we concluded that the compensation court had not abused its discretion in finding the claimant's expert's opinions had sufficient foundation. We reasoned that whether the expert possessed or considered the entirety of the claimant's personal or psychological history in forming her opinion "ultimately concern[ed] the weight to be given to [the expert's] opinions by a trier of fact, rather than the admissibility of the opinions."[15] We recalled, "An appellate court is not a superexpert and will not lay down categorically which factors and principles an expert may or may not consider; such matters go to the weight and credibility of the opinion itself and not to its admissibility."[16]

[12] Applying that precedent here, we cannot agree with Emerald that Marshall's opinion lacked foundation. Whether Marshall possessed or considered the entirety of Prinz' medical history concerned the weight to be given his opinion by the trier of fact, rather than the admissibility of his opinion. As we have said previously, the Workers' Compensation Court

---

[14] *Hynes v. Good Samaritan Hosp., supra* note 11.

[15] *Id.* at 768, 869 N.W.2d at 88.

[16] *Id.*

is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony.[17]

Turning to its second argument, Emerald highlights a specific finding by the compensation court that Prinz' N95 mask was not sprayed with chemicals before she attempted to wear it. Emerald contends that this factual finding "render[ed]"[18] Marshall's opinion to be without foundation because Marshall "clearly was under the impression that a chemical was sprayed onto [Prinz'] mask before being placed in the sterilizer machine."[19]

This argument is premised on speculation, and we reject the notion that the court's factual finding somehow affected the foundation for Marshall's opinion. The evidence shows that Marshall was one of Prinz' treating physicians, and his opinion was based on his in-person evaluations of Prinz and his review of her medical records following the mask incident. Here, Marshall was in possession of such facts as would enable him to express a reasonably accurate conclusion, as distinguished from a mere guess or conjecture.[20]

[13] Finally, Emerald argues that Marshall's opinion lacked foundation because he used the word "associated" when opining on the causal connection between the work accident and Prinz' injury. We will consider the level of certainty in Marshall's opinion in the next section, when addressing the sufficiency of the evidence to prove causation. But for purposes of resolving Emerald's foundation argument, we recall that an objection to the opinion of an expert based upon the lack of certainty in the opinion is an objection based upon

---

[17] *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

[18] Brief for appellant at 14.

[19] *Id.* at 15.

[20] See *Hynes v. Good Samaritan Hosp., supra* note 11.

relevance[21] and not upon foundation.[22] Seeing no merit to Emerald's foundation arguments, we conclude that the compensation court did not abuse its discretion in finding that Marshall's opinion had sufficient foundation to be admitted in evidence to prove causation.

### (b) Sufficiency of Evidence

The next question is the sufficiency of Prinz' evidence to prove causation. On this issue, Emerald essentially argues that Marshall's use of the word "associated" was insufficient as a matter of law to establish the causal connection between the work accident and Prinz' injury.

Marshall's opinion is set forth in the background section above, but we repeat part of it here for the reader's convenience:

> [Prinz] reported to me that her respiratory issues (now known to be asthma) started immediately after putting on a reused UV-treated N95 mask. There is no readily available test that can show causality between the exposure and her respiratory issues. However, I think there is reasonable degree of medical certainty that the two are associated as there were no other triggers identified.

[14-16] The law on causation in workers' compensation cases is well settled. If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability.[23] Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable

---

[21] *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). See, also, *Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 924 N.W.2d 678 (2019) (relevant evidence means evidence having any tendency to make existence of any fact that is of consequence to determination of action more probable or less probable than it would be without evidence).

[22] See, e.g., *Paulsen v. State, supra* note 21.

[23] *Hintz v. Farmers Co-op Assn., supra* note 9.

probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment.[24] Expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court.[25]

[17-19] We have said that the determination of causation is ordinarily a matter for the trier of fact.[26] Moreover, it is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe.[27] Importantly, an appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole.[28]

Having considered the entire evidentiary record, we cannot say that the compensation court was clearly wrong in finding that Prinz met her burden to prove causation. The question here is posed in a workers' compensation case, where the act should be construed liberally to carry out its spirit and beneficent purpose of providing compensation to employees injured on the job.[29] Marshall articulated that his opinion was based on a reasonable degree of medical certainty. His opinion of the "associat[ion]" was not based on a mere possibility. The court, in turn, characterized Marshall's opinion as "certainly more definite than the words 'could,' 'may,' or 'possibly.'" The court made an explicit finding that Marshall's opinion was "sufficient and persuasive" in light of the timing of the events and the objective evidence that something happened to Prinz on July 17, 2020. The evidence in the record, including the

---

[24] *Damme v. Pike Enters., supra* note 17.

[25] *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992); *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992).

[26] *Hynes v. Good Samaritan Hosp., supra* note 11.

[27] *Hintz v. Farmers Co-op Assn., supra* note 9.

[28] *Damme v. Pike Enters., supra* note 17.

[29] See *Mosher v. Whole Foods Market, supra* note 6.

pulmonologist's opinion, Prinz' testimony, and Prinz' medical records and evaluations, was sufficient to substantiate the court's determination that Marshall's opinion was credible. And that court was the sole judge of the credibility and weight to be given Marshall's opinion.[30]

[20] If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.[31] Because the record contains evidence to substantiate the compensation court's finding of causation, we find no clear error in this regard.

## 2. Loss of Earning Capacity

Emerald argues that the compensation court erred in determining the amount of its award for loss of earning capacity. We find no clear error.

When determining a loss of earning capacity for an injured worker, the four factors to consider under Neb. Rev. Stat. § 48-121 (Reissue 2021) are the worker's (1) eligibility to procure employment generally, (2) ability to earn wages, (3) ability to hold a job obtained, and (4) capacity to perform the work in the job in which the worker is engaged.[32]

[21] In its award, the compensation court specifically stated that it considered the applicable factors. Emerald fails to explain how the court's determination was clearly wrong. And while Emerald speculates that Prinz' earning capacity may have been impaired by a lesser amount than that awarded, a workers' compensation award cannot be based on mere possibility or speculation.[33] There was sufficient competent evidence in the record to warrant the compensation court's award.

---

[30] See *Damme v. Pike Enters., supra* note 17.

[31] *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018).

[32] See *Martinez v. CMR Constr. & Roofing of Texas*, 302 Neb. 618, 924 N.W.2d 326 (2019).

[33] *Melton v. City of Holdrege*, 309 Neb. 385, 960 N.W.2d 298 (2021).

## VI. CONCLUSION

We find no clear error in the compensation court's determination that Prinz proved an alleged injury was caused by an accident arising out of and in the course of her employment. Nor can we say that the compensation court's determination regarding loss of earning capacity was clearly wrong. We affirm the judgment.

AFFIRMED.