IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HERNANDEZ V. ASSOCIATED WHOLESALE GROCERS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JUAN CARLOS HERNANDEZ, APPELLANT,

V.

ASSOCIATED WHOLESALE GROCERS, APPELLEE.


Filed July 1, 2025.    No. A-24-793.


Appeal from the Nebraska Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Murphy Cavanaugh, of Rehm Law Firm, P.C., L.L.O., for appellant.

Jenna M. Christensen, of Engles, Ketcham & Olson, P.C., for appellee.


PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Juan Carlos Hernandez appeals from an order of the Nebraska Workers' Compensation Court denying him workers' compensation benefits. He argues that the court erred in concluding that he failed to prove that his March 2023 knee surgery was causally related to a knee injury he sustained in December 2020 while in the course of his employment. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

On October 8, 2020, Hernandez was working as an order selector for Associated Wholesale Grocers (AWG) when he picked up a case of laundry detergent, pivoted, and felt a pop in his right knee. He sought medical treatment at Sunny Meadow Medical Clinic. An X-ray revealed that

Hernandez had "[t]ricompartmental degenerative arthritis. Probable loose body in the anterior joint space. Small knee effusion or synovitis." Hernandez was referred for physical therapy.

Hernandez began physical therapy on October 16, 2020. After 3 weeks of treatment, Hernandez was referred to Dr. Ryan Arnold, an orthopedic specialist. Dr. Arnold diagnosed Hernandez with a right knee chronic anterior cruciate ligament (ACL) tear; right knee chronic medial meniscus deficiency and end-stage, grade IV medial compartment osteoarthritis, bipolar; right knee chronic loose body, anterolateral joint line with surrounding synovial covering; and right knee lateral compartment grade II or possible grade III, chondromalacia. Dr. Arnold indicated that his findings were consistent with a torn ACL that occurred in the "distant past"; that at the time Hernandez tore his ACL, he "also tore his medial meniscus, or over time from being ACL deficient led to meniscus deficiency"; that there was no acute aspect of the injury; and that Hernandez' condition represented an "exacerbation of his underlying chronic, progressive, degenerative knee injuries." Dr. Arnold indicated that surgical intervention would be limited and of little benefit and recommended that Hernandez be placed at maximum medical improvement (MMI). Dr. Arnold advised Hernandez to wear a knee brace to help manage any instability in his knee.

Hernandez returned to work at AWG and wore a knee brace as prescribed by Dr. Arnold. Two years later, in January 2023, after continuing to have pain and instability in his knee, Hernandez obtained a second opinion from Jose Nuno, a physician assistant at Nebraska Health and Wellness Clinic. Hernandez was subsequently referred to Dr. Jordan Ochs, an orthopedic surgeon. Hernandez underwent a second MRI at that time, and Dr. Ochs' report dated February 1, 2023, stated that Hernandez' MRI:

Demonstrates chronic full-thickness tear of the PCL. Old osseous injury involving the PCL attachment [which] appears to be healed with slight undulation of the PCL. Complex tear of the posterior horn the medial meniscus involving the posterior horn and root. Some degeneration . . . tearing noted to the posterior horn of the lateral meniscus. Tricompartmental degenerative changes are noted with significant chondromalacia the medial lateral compartments and a medial femoral osteophyte. Ossific loose body noted in the anterior aspect of the knee adjacent to the anterior horn lateral meniscus with some additional loose bodies in the popliteal recess.

Dr. Ochs stated, "I am not sure as to why surgical intervention was not recommended for him in the past however[,] I discussed with [Hernandez] that with his persistent knee instability that I think despite some early degenerative changes due to chondral injury he would still be a good candidate for ACL reconstruction."

In March 2023, Dr. Ochs performed an "ACL reconstruction with BTB autograft, partial medial meniscectomy, partial lateral meniscectomy, chondroplasty of medial femoral condyle, [and] removal of [i]ntra-articular loose body." Hernandez completed physical therapy following the surgical intervention.

In May 2023, Hernandez filed a petition in the Nebraska Workers' Compensation Court alleging that he sustained an accident and injury to his right knee arising out of and in the course of his employment with AWG on or about October 8, 2020. Hernandez requested that the Workers'

Compensation Court determine his entitlement to temporary and permanent disability benefits; payment of medical expenses; vocational rehabilitation benefits; and waiting time penalties, attorney fees, and interest.

In its answer, AWG alleged that Hernandez was not suffering from an injury or disease arising out of or in the course of his employment; that any alleged disability was not related to any work injury sustained while Hernandez was employed by AWG; that any alleged disability was the result of an intervening, superseding cause, event or injury for which AWG was not responsible; that any alleged bills, temporary total disability or permanent disability benefits which Hernandez may have incurred were not due to any work-related accident with AWG, but were the result of a preexisting disability and/or a subsequent non-work-related accident or illness; that Hernandez's petition was barred for failing to give notice of his alleged injury; that the petition was barred by the applicable statute of limitations; and that the action was not one in which a penalty or attorney fees should be assessed against AWG.

Prior to trial, the parties entered into a stipulation wherein they agreed, among other things, that Hernandez sustained an injury to his right knee after an accident arising out of and in the course of his employment at AWG on October 8, 2020; that Hernandez received $4,952.53 in temporary disability benefits; and that all medical treatment from October 8 through December 10, 2020, had been voluntarily paid by AWG. The remaining issues for trial related to the nature and extent of the injury insofar as the resulting injury was a temporary exacerbation or permanent aggravation; Hernandez' entitlement to indemnity benefits; whether Hernandez' surgery was necessitated by the October 8, 2020, work accident and AWG's liability for medical bills related to Hernandez' knee surgery and treatment; and Hernandez' entitlement to future medical care.

The trial was held in August 2024. The Workers' Compensation Court received multiple exhibits including Hernandez' medical records, a workers' compensation bill summary, and a return-to-work examination. Testimony was adduced from Hernandez consistent with the facts above.

In its order, the Workers' Compensation Court stated that Dr. Arnold opined that Hernandez suffered an exacerbation and/or aggravation of his underlying degenerative knee conditions; that there was "simply insufficient evidence for the Court to conclude the March 2023 knee surgery is causally related to [Hernandez'] work accident"; that the outstanding medical bills were related to the knee surgery; that Hernandez was not entitled to an award of future medical care; and that Hernandez was not entitled to temporary total disability or permanent partial disability benefits.

Hernandez now appeals from the Workers' Compensation Court's order denying him benefits.

ASSIGNMENTS OF ERROR

Hernandez assigns, restated, that the Workers' Compensation Court erred in finding that his March 2023 knee surgery was not causally related to the October 8, 2020, injury at AWG and that he was not entitled to reimbursement of medical bills or further indemnity benefits other than those already paid by AWG.

STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024).

On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

ANALYSIS

Hernandez assigns that the Workers' Compensation Court erred in finding that no causal connection existed between his knee surgery and the initial work injury sustained on October 8, 2020. He asserts that despite any alleged preexisting condition, he was still entitled to benefits and that the competing medical records cast doubt on the court's findings on causation.

In a workers' compensation case involving a preexisting condition, the claimant must prove by a preponderance of evidence that the claimed injury or disability was caused by the claimant's employment and is not merely the progression of a condition present before the employment-related incident alleged as the cause of the disability. *Damme v. Pike Enters*., 289 Neb. 620, 856 N.W.2d 422 (2014). A workers' compensation claimant can recover benefits when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, even if no disability would have occurred absent the preexisting condition. *Id.* The "'lighting up'" or acceleration of a preexisting condition by an accident is a compensable injury. *Id.* And causation of an injury or disability presents an issue of fact. *Id.*

The law on causation in workers' compensation cases is well settled. *Prinz v. Omaha Operations, supra*. If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Id.* Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment. *Id.* Expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. *Id.*

The determination of causation is ordinarily a matter for the trier of fact. *Id.* Moreover, it is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. *Id.* Importantly, an appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Id.*

Here, the Workers' Compensation Court found that there was "no explicit statement from any doctor, opining [Hernandez'] March 2023 knee surgery is causally related to the work accident on October 8, 2020," and that there was "simply insufficient evidence for the Court to conclude the March 2023 knee surgery is causally related to [Hernandez'] work accident." In support of the conclusion that the evidence was insufficient to conclude that there was a causal connection, the Workers' Compensation Court specifically found:

First, it is undisputed [Hernandez'] ACL and meniscus tears predated the work accident on October 8, 2020. While [Hernandez] testified he felt and heard a pop on October 8, 2020, no doctor opined the popping sensations were his ACL and/or meniscus tearing. Instead, Dr. Arnold believed the tears were chronic and predated the work accident. Dr. Ochs never offered any opinion on the matter. Given that the ACL reconstruction and meniscectomy repaired those preexisting tears, the Court is reluctant to conclude the March 2023 knee surgery was necessitated (i.e., caused by) [Hernandez'] work accident.

The Court was also troubled by the lengthy time gap between the accident date and the date of surgery. To state the obvious, two plus years passed between the date of [Hernandez'] October 2020 work accident and the March 2023 knee surgery. In between that time, [Hernandez] continued to work for [AWG] performing the same job he did at the time of his injury, leaving the Court to conclude [Hernandez] was essentially fully functional after the work accident. The two-year time gap and [Hernandez'] ability to work in a physically demanding job for that two-year period made the March 2023 knee surgery appear more likely related to the chronic tears in his knee rather than to the exacerbation of the tears he suffered in October 2020.

Finally, while [Hernandez] testified he had ongoing right knee problems, particularly instability, from the time he was discharged by Dr. Arnold in December 2020 until the time he saw Dr. Ochs in January 2023, the Court is unsure if those problems were only present after the work accident. The Court carefully reviewed its notes of [Hernandez'] testimony. [Hernandez] admitted to seeking chiropractic treatment for soreness in his right knee prior to the work accident. [Hernandez] did not actually remember doing that, testifying he only knew that to be true because his lawyer told him. [Hernandez], however, never testified to the "healthiness" of his knee before the work accident. There was no "before" and "after" testimony about the condition of his knee. Moreover, the aforementioned chiropractor office notes are not in evidence, so the Court is unsure when [Hernandez] went to the chiropractor for knee soreness. The absence of this evidence again caused the Court to question the causal relationship between the October 2020, work accident and the March 2023 knee surgery.

The parties do not dispute that an accident occurred and that Hernandez sustained an injury to his right knee in the course of his employment with AWG on October 8, 2020. Rather, the parties dispute the nature and extent of the injuries. The court found that while the exacerbation was a compensable injury, neither expert provided a causation opinion that Hernandez' need for surgical intervention in 2023 was causally related to the work accident in October 2020.

The record reveals that the day following the accident, Hernandez sought medical treatment wherein an X-ray and MRI of his right knee were taken. The X-ray revealed that Hernandez had "[t]ricompartmental degenerative arthritis. Probable loose body in the anterior joint space. Small knee effusion or synovitis." Following the MRI showing that Hernandez had a tear of the medial meniscus, Hernandez received a referral for physical therapy and orthopedic care. Hernandez was subsequently seen by an orthopedic doctor, Dr. Arnold, in December 2020. Dr. Arnold opined

> with a reasonable degree of medical certainty, this represents exacerbation of his underlying chronic, progressive, degenerative knee injuries. At some point in time, he tore his ACL in the distant past, which either at the time of injury also tore his medial meniscus, or over time from being ACL deficient led to meniscus deficiency, as seen on the MRI scan. This increases the load across the medial articular surface resulting in grade IV changes over years of instability and degeneration. The loose body present in the anterior aspect is well-synovialized and does not appear to be mobile. I believe this is chronic as well. We see no acute aspect of the injury, as described by him. We recommended a knee sleeve for continued function. He may work full-duty without restrictions relative to the work injury. I feel that surgical treatment is limited and to be of little benefit, secondary to the degree of arthritic changes seen in the knee, and that any attempts at debridement would likely have a short term improvement, but potentially worsening his symptoms.

The record shows that Hernandez returned to work wearing a knee brace as recommended by Dr. Arnold in the same position he held prior to the accident and working the same hours plus overtime hours during that time. Approximately 2 years later, Hernandez saw a different orthopedic doctor, Dr. Ochs, for a second opinion on whether he was a good candidate for surgical intervention on his right knee. Dr. Ochs' medical note indicated that Hernandez had complex tearing of the medial meniscus from the body to the posterior horn root consistent with the previous exam with "increasing degeneration and subtle areas of new tearing at the body to posterior horn of the lateral meniscus"; "chronic full-thickness ACL tear. Old healed osseous injury at the posterior proximal tibia at the distal PCL tibial attachment which may represent previous osseous avulsion injury which has healed"; tricompartmental osteoarthritis with chondromalacia in the medial and lateral compartments, ossified loose body at the anterior knee with increasing parameniscal cystic change near the anterior horn central attachment of the lateral meniscus with additional loose bodies; and small knee joint effusion. Dr. Ochs noted that "I am not sure as to why surgical intervention was not recommended for him in the past" and indicated that he believed that Hernandez was a "good candidate for ACL reconstruction."

Prior to undergoing the ACL reconstruction surgery, the preoperative record indicated that Hernandez' injury was a "right complex tear at the posterior horn medial meniscus" and "chronic torn anterior cruciate ligament." Dr. Ochs' post operative diagnosis provided that Hernandez' right knee had a "chronic rupture of the ACL"; a medial meniscus tear; a lateral meniscus tear, intra-articular loose body, and chondromalacia of the knee—medial femoral condyle (grade 2) and trochlea grade 4. Dr. Ochs' medical records do not indicate at what point the ACL was torn, rather the diagnosis indicated that it was chronic and that there was an old osseous injury that had healed.

Dr. Arnold's impression was that the ACL was torn in the distant past and that it led to the deficiency in his knee and subsequent meniscus tearing.

Hernandez argues that this case involves "two treating doctors with differing opinions regarding [his] condition and causation on the knee injury" and that the discrepancies between the two opinions "should have cast doubt on the trial court regarding the causal link between [Hernandez'] surgery and his initial work injury." Brief for appellant at 18. Hernandez urges this court to "properly weigh the conflicting medical opinions." *Id.* Hernandez asserts that because there was evidence in the record that supported the opposite conclusion, this court should reweigh the evidence and substitute our own views for that of the workers' compensation court. We decline to do so. When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014).

Dr. Arnold opined that Hernandez' preexisting ACL injury either included a meniscus tear or led to a meniscus deficiency, and that there was no indication of an acute aspect of the injury. Dr. Arnold stated that the work accident and injury were an exacerbation of the preexisting condition, and that surgery was not recommended. Dr. Ochs indicated that he was unsure why surgical intervention was not recommended previously and subsequently completed the ACL reconstruction. In light of the expert opinions, we cannot say that the workers' compensation court erred in accepting Dr. Arnold's expert opinion as opposed to Dr. Ochs. Nor do we find that Dr. Ochs' testimony, standing alone, provides a clear statement that causally links the surgery to the work-related accident. If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024). Because the record contains evidence to substantiate the compensation court's finding of causation, we find no clear error by the Workers' Compensation Court.

CONCLUSION

For the reasons stated above, we affirm.

AFFIRMED.