Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/22/2026 08:08 AM CDT

Kristine Hastreiter, appellant, v. Foltz Brothers,
Inc., and Farm Bureau Property & Casualty
Insurance Company, its workers'
compensation insurer, appellees.

___ N.W.3d ___

Filed May 22, 2026.    No. S-25-515.

1.  **Workers' Compensation: Appeal and Error.** An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2.  ____: ____. On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

3.  **Workers' Compensation: Judgments: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence.

4.  **Workers' Compensation: Proof.** For an award based on an employee's death, a claimant must establish, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in death compensable under the Nebraska Workers' Compensation Act.

5.  **Workers' Compensation: Expert Witnesses.** Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between

the claimant's injuries and the accident occurring in the course and scope of the claimant's employment.

6. **Workers' Compensation: Evidence: Expert Witnesses.** Expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court.

7. **Trial: Proximate Cause.** The determination of causation is ordinarily a matter for the trier of fact.

8. **Workers' Compensation: Expert Witnesses.** It is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe.

Appeal from the Workers' Compensation Court: Julie A. Martin, Judge. Affirmed.

Jennifer L. Sturm and Raymond P. Atwood, Jr., of Atwood Law, P.C., L.L.O., for appellant.

Joel D. Nelson and Tindra C. Norris, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellees.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Papik, J.

After being diagnosed with cancer, Thomas Hastreiter continued to work. One day, while at work, he suffered a hip injury. The hip injury required surgery. Complications followed and prevented Thomas from receiving recommended immunotherapy treatments for cancer. Months later, Thomas died. His widow, Kristine Hastreiter, subsequently sought death benefits in the Workers' Compensation Court. Although the evidence was undisputed that Thomas died from cancer, Kristine took the position that she was entitled to death benefits because Thomas' work injury prevented him from receiving cancer treatments that would have extended his life. The compensation court found Kristine was not entitled to death benefits. She appeals. Because we find no reversible error on the part of the compensation court, we affirm.

## I. BACKGROUND

### 1. Thomas' Cancer Diagnosis, Injury, and Death

In December 2021, Thomas was diagnosed with urothelial carcinoma, a type of cancer. After his cancer diagnosis, he continued to work for his employer, Foltz Brothers, Inc., as a truckdriver and farm laborer.

On September 26, 2022, Thomas fell at work and injured his left hip. On September 29, while Thomas was hospitalized for the hip injury, his oncologist informed him that his cancer had spread. The oncologist described this metastatic cancer as "incurable but treatable" and recommended a form of immunotherapy treatment after Thomas recuperated from the hip injury.

Thomas was never able to receive the recommended cancer treatment. He underwent hip surgery and later developed an infection related to the surgery. He died on December 14, 2022. His death certificate listed progressive metastatic cancer as the "immediate cause" of death. In a section for conditions contributing to death, the death certificate stated that complications and infection from Thomas' hip injury delayed treatment, "resulting in progression of cancer."

### 2. Workers' Compensation Action

After Thomas' death, Kristine filed a petition in the compensation court against Foltz Brothers and its insurer. Among other things, Kristine sought statutory death benefits pursuant to Neb. Rev. Stat. § 48-122 (Reissue 2021). The parties stipulated that Thomas sustained a hip injury that arose out of and in the course of his employment. Relevant to this appeal, the parties disputed the allegation in Kristine's petition that Thomas' hip injury combined with the preexisting cancer to cause Thomas' death. The matter proceeded to trial on that issue.

### 3. Expert Evidence

Consistent with workers' compensation court rules of procedure, the parties submitted several letters from experts that were solicited in lieu of the experts' personal testimony. See Workers' Comp. Ct. R. of Proc. 10(A) (2024). The compensation court received these letters, which addressed the cause of Thomas' death. Because the letters are central to our resolution of this appeal, we describe them in some detail.

### (a) Dr. Samer Renno

The compensation court received a letter from Thomas' oncologist, Dr. Samer Renno. Dr. Renno wrote that he had recommended a form of immunotherapy to manage Thomas' urothelial cancer but that the immunotherapy was delayed as a result of complications from Thomas' hip injury. Dr. Renno stated that if the immunotherapy treatment had been initiated earlier, "this may have made a difference in prolonging [Thomas'] life (assuming that immunotherapy was effective)."

### (b) Dr. Benjamin Teply

Foltz Brothers and its insurer offered a letter containing the opinions of Dr. Benjamin Teply, an oncologist. In Dr. Teply's opinion, Thomas died from the "natural progression" of his urothelial cancer. Dr. Teply submitted that neither the hip injury nor the infection caused the cancer to grow or spread.

Dr. Teply did acknowledge that the hip injury and resulting infection affected Thomas' ability to receive the recommended treatment for his urothelial cancer. Additionally, he stated that there were studies showing the recommended treatment for Thomas' urothelial cancer "can prolong survival" and that therefore, Thomas "may have lived longer on the basis of benefit from anticancer therapy if he had not had the left hip injury, surgery, and infection."

In his letter, Dr. Teply responded to a question from counsel for Foltz Brothers and its insurer. The question, quoted in Dr. Teply's letter, stated:

It is my understanding that, in your experience and based on the studies you reviewed, had [Thomas'] cancer doctors been able to start the [recommended] immunotherapy soon after the metastatic urothelial cancer was diagnosed in mid-September 2022, he might have been expected to live another 3.8 - 4.8 months, perhaps as long as 6 months, versus the roughly 3 months he actually lived between the September 19, 2022 pathology report and his death on December 14, 2022. It is further my understanding that the 3.8 - 6 months ranges are based on studies and statistical averages assuming a median result. Is my understanding correct? Please explain.

Dr. Teply responded to this question by first stating, "Correct. The prognosis for [Thomas'] cancer was unfortunately guarded when the metastatic disease was identified." Dr. Teply then went on to discuss statistical models that have been developed to estimate the prognosis for cancer patients receiving treatments. Dr. Teply stated that if one model were applied to Thomas, "his median survival would be estimated to be 3.8 [months]." Discussing another model that he described as "the most applicable" for Thomas, Dr. Teply stated that Thomas' "median survival would be estimated to be 4.8 [months] with the receipt of [the recommended treatment]." "Therefore," Dr. Teply concluded, "I would have estimated his survival to be 3-6 months from his cancer with treatment at the time that metastatic disease was diagnosed in September of 2022."

Dr. Teply stated in his letter that all his opinions were expressed to a reasonable degree of medical certainty based upon his education, training, and experience.

### (c) Dr. Morgan LaHolt

Kristine also offered a letter addressed to Kristine's counsel from Dr. Morgan LaHolt, a physiatrist. Dr. LaHolt stated that it was not his opinion that Thomas' fall "accelerated his cancer." Dr. LaHolt stated that, instead, Thomas' hip injury prevented

him from receiving the recommended cancer treatment. He also addressed Dr. Teply's opinions, stating the following:

> Dr. Teply does indicate that [Thomas] "missed out on the opportunity for this further cancer therapy as a result of the injury, surgery and infection." [Dr. Teply] goes on to state that "[Thomas] may have lived longer on the basis of benefit from anticancer therapy if he had not had the left hip injury, surgery and infection." These statements are[,] in essence, a restating of my opinion as it relates to [Thomas]. It remains my opinion that the inability to participate in cancer treatment combined with his hip infection resulted in a shortening of [Thomas'] life expectancy.

### 4. COMPENSATION COURT DENIES DEATH BENEFITS

The compensation court denied Kristine's claim for workers' compensation death benefits. In its written award, the compensation court explained that Kristine claimed that Thomas' hip injury contributed to his death because it prevented him from receiving treatment that would have extended his life. The compensation court explained that, in order to recover, Kristine was obligated to prove "by a preponderance of the evidence" that an accident arising out of and in the course of Thomas' employment caused his death.

The compensation court understood the viability of Kristine's theory to be an issue of first impression in Nebraska. The compensation court discussed cases cited in a workers' compensation treatise, in which courts have found that work injuries that cause cancer to grow or spread and thereby "hasten" death are compensable. See 1 Arthur Larson et al., Larson's Workers' Compensation Law § 9.02 (2025). But the compensation court distinguished those cases because there was no evidence here that the hip injury caused Thomas' preexisting cancer to grow or spread. The compensation court further concluded that the hip injury did not "hasten" Thomas' death. The compensation court explained that it viewed "hastening" death as distinct

from a lost opportunity to "prolong[] [Thomas'] life, which is what treatment may possibly have done."

The compensation court also found shortcomings in the evidence that the recommended treatment would have extended Thomas' life. On that topic, it stated the following:

Nor was there any guarantee the therapy would extend [Thomas'] life especially since the cancer had already spread to other organs before the accident. [Dr. Renno] hedged his opinions in more ways than one, expressing it was "possible" if therapy had been started early it "may" have prolonged [Thomas'] life "assuming" it was even effective. . . . The only other expert specializing in the treatment and diagnosis of cancer, Dr. Teply, stated [Thomas] "may" have lived maybe three to six months longer had he had treatment, but he opined with certainty the work injury did not cause, aggravate, or accelerate the cancer's growth . . . . Expert medical testimony based upon "may," "possibly," or "appears" lacks the definiteness required to support [a workers' compensation] award . . . . *Edmonds* [*v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992)].

The compensation court concluded its analysis of Kristine's claim for death benefits by stating:

[T]he evidence does not support a finding that [Thomas'] death was a result of the work accident and injury to his hip. The fact is he died as a result of his pre-existing cancer. For all the foregoing reasons, the Court denies [Kristine's] prayer to find [Thomas'] cancer was related to his work injury occurring on or about September 26, 2022.

### 5. Compensation Court Awards Temporary Total Disability Benefits, Associated Expenses, and Fees

The compensation court awarded Kristine compensation for Thomas' temporary total disability for September 27, through

December 14, 2022, the period during which Thomas' hip injury made him unable to work, "regardless of the cancer." The compensation court also awarded medical bills, mileage, waiting-time penalties, interest, attorney fees in the amount of $10,000, and other fees associated with Thomas' hip injury.

Kristine appeals.

## II. ASSIGNMENTS OF ERROR

Kristine assigns several errors on appeal. She assigns, condensed and restated, that the compensation court erred (1) by not awarding her death benefits and (2) by not awarding her sufficient waiting-time penalties and attorney fees. Kristine's brief, however, fails to make any argument about waiting-time penalties or attorney fees. Accordingly, we will not address that assignment. See *City of Omaha v. Professional Firefighters Assn.*, 309 Neb. 918, 963 N.W.2d 1 (2021) (errors that are assigned but not argued will not be addressed).

## III. STANDARD OF REVIEW

[1] An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024). See, also, Neb. Rev. Stat. § 48-185 (Reissue 2021).

[2,3] On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Prinz, supra.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party,

and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

## IV. ANALYSIS

Kristine challenges the compensation court's determination that she was not entitled to death benefits. We understand the compensation court to have determined that she was not entitled to death benefits for two reasons. First, the compensation court determined that Kristine's theory of recovery—that Thomas' hip injury contributed to his death because it prevented him from receiving treatment that would have extended his life—was not a valid theory of recovery under Nebraska workers' compensation law. We understand the compensation court to have alternatively concluded that even if Kristine's theory of recovery was valid, she failed to adequately establish causation. Specifically, we understand the compensation court to have found that Kristine failed to prove that Thomas' life would have been extended had he received the recommended immunotherapy treatment, given how far his cancer had already spread before the work accident.

For purposes of this opinion, it is not necessary for us to determine whether Kristine's theory of recovery is valid. Even if we assume that the theory of recovery is valid in a workers' compensation case, we conclude the compensation court did not err in concluding Kristine failed to prove that the work injury proximately caused Thomas' death. We explain why below. We first discuss the legal principles governing proof of causation in workers' compensation cases. We then apply those principles to the facts before us.

### 1. LEGAL PRINCIPLES GOVERNING
### PROOF OF CAUSATION

[4] For an award based on an employee's death, a claimant must establish, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in death compensable under the Nebraska Workers' Compensation Act. *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d

59 (1991). A claimant must generally prove proximate causation through expert medical testimony. See *Prinz v. Omaha Operations*, 317 Neb. 744, 755, 11 N.W.3d 641, 651 (2024) ("[i]f the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability").

[5,6] Expert medical causation testimony in workers' compensation cases must also meet certain standards. Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment. *Prinz, supra.* Expert medical testimony based upon "could," "may," or "possibly" lacks the definiteness required to support an award from the Workers' Compensation Court. *Id.*

[7,8] The determination of causation is ordinarily a matter for the trier of fact. *Id.* Moreover, it is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witness to believe. *Id.*

## 2. Causation Principles Applied

Before the compensation court and before us on appeal, Kristine argues that Thomas' work injury proximately caused his death because it prevented him from receiving the recommended cancer treatment and that, had he received the treatment, he would have lived longer than he did. Assuming that is a valid basis for a claim for death benefits, Kristine would be obligated to offer expert medical testimony to substantiate her assertion that Thomas would have lived longer had he received the recommended cancer treatment. The compensation court concluded she failed to establish that fact. We find no error in that determination for reasons we will explain below.

(a) Compensation Court Did Not
Apply Incorrect Standard

Before discussing the specific expert testimony offered, we address an argument made by Kristine that the compensation court applied a heightened and incorrect causation standard. On this point, Kristine draws our attention to the compensation court's statement that there was no "guarantee" that the recommended treatment would extend Thomas' life. She correctly asserts that a workers' compensation claimant need not prove causation with "absolute certainty." See *Welke v. City of Ainsworth*, 179 Neb. 496, 502, 138 N.W.2d 808, 812 (1965). Rather, a claimant must establish by a preponderance of the evidence that the employment proximately caused an injury which resulted in death compensable under the Nebraska Workers' Compensation Act. See *Rosemann, supra*.

We do not, however, understand the compensation court to have applied a heightened causation standard. Although the compensation court did say there was no "guarantee" the recommended treatment would extend Thomas' life, we read that as merely a colloquial, introductory sentence. Earlier in its award, the compensation court recited the correct preponderance of the evidence standard. In addition, the rest of the paragraph does not purport to apply a requirement that the expert medical testimony must establish with absolute certainty that Thomas would have lived longer with the recommended treatment. It instead considered whether the opinions of Drs. Renno and Teply were sufficiently definite, an appropriate consideration for the compensation court. See *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992).

In the subsections below, we discuss the expert testimony received by the compensation court and explain why the compensation court did not err by concluding that Kristine failed to establish that Thomas would have lived longer had he received the recommended treatment.

### (b) Dr. Renno

The compensation court concluded that Dr. Renno did not provide a sufficiently definite opinion because he stated that Thomas "may" have lived longer had he received the recommended treatment. There is no question that the opinion of Dr. Renno was insufficiently definite. The compensation court was correct when it observed that he "hedged his opinions in more ways than one," by stating that it was "possible" that the treatment "may" have prolonged Thomas' life, "assuming that [the treatment] was effective." This statement was based upon "may" and "possibly" and thus lacked the definiteness required to support an award from the Workers' Compensation Court. See *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024).

### (c) Dr. Teply

Dr. Teply's letter requires more discussion. As the compensation court observed, Dr. Teply stated that Thomas "may have lived longer" had he received the recommended treatment. This statement, standing alone, is no more definite than the opinion of Dr. Renno; therefore, the compensation court was correct to conclude that it was not sufficiently definite. As Kristine points out, though, Dr. Teply's letter also referenced survival models and stated that he "would have estimated [Thomas'] survival to be 3-6 months" if he had received the treatment when it was first recommended. Kristine adds that Thomas died less than 3 months after the treatment was recommended.

But, even considering Dr. Teply's other statements, it is not obvious to us that he offered a sufficiently definite causation opinion. Dr. Teply's statements must be viewed in context. His statements about survival models and what he "would have estimated" Thomas' survival to be were in response to a question in which he was asked to confirm whether he believed Thomas "might" have been expected to live another 3 to 6 months based upon the survival models. Dr. Teply answered, "Correct." But a statement that Thomas "might"

have lived another 3 to 6 months is, in substance, no different than a statement that he "may" have lived another 3 to 6 months. Even Dr. Teply's statement that he "would have estimated" Thomas to live another 3 to 6 months appears to carefully stop short of expressing that it was, in fact, Dr. Teply's opinion to a reasonable degree of medical certainty or reasonable degree of medical probability that Thomas would have lived 3 to 6 months longer had he received the recommended treatment.

As it turns out, however, we need not determine whether Dr. Teply provided a sufficiently definite expert opinion that Thomas would have lived longer had he received the recommended treatment. Even assuming he did, when the compensation court determined that Kristine did not prove that Thomas would have lived longer with the recommended treatment, it impliedly declined to credit Dr. Teply's survival estimate. And the compensation court was not obligated to credit such testimony.

We have said that "it is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, *if any*, expert witnesses to believe." *Id*. at 756, 11 N.W.3d at 651 (emphasis supplied). It is thus within the compensation court's authority to decline to credit even undisputed expert medical testimony. Consider, for example, this court's opinion in *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). In that case, the compensation court declined to credit unrefuted expert testimony that a back injury was work related. We found no error. We stated that the compensation court apparently "chose not to believe the undisputed testimony of plaintiff's medical witness," *id*. at 897-98, 464 N.W.2d at 341, but that it was "not bound by the testimony of an expert," nor was it for this court "to determine the weight and credibility of such evidence," *id.* at 897, 464 N.W.2d at 341.

Kristine argues that under this court's opinion in *Spangler v. State*, 233 Neb. 790, 448 N.W.2d 145 (1989), the compensation court was bound to credit Dr. Teply's testimony because

it was undisputed. But in *Spangler*, this court affirmed the compensation court's order when it declined to credit expert medical testimony and stated that the compensation court is "not required to take the opinion of an expert in regard to the causal connection between the alleged accident or exertion and the resulting disability as binding upon it." 233 Neb. at 798, 448 N.W.2d at 151.

Our opinion in *Spangler* did cite an earlier case, *Mann v. City of Omaha*, 211 Neb. 583, 593, 319 N.W.2d 454, 459 (1982), in which we held that the compensation court clearly erred by failing to rely on expert medical testimony that "[was] based on firsthand knowledge, [was] credible, and [had] no demonstrable weaknesses or failure of foundation." But *Mann*, read in light of *Spangler*, identifies, at most, a very narrow set of circumstances in which the compensation court is bound to credit expert medical testimony, i.e., when undisputed medical expert testimony is not only undisputed, but so unassailable that the compensation court clearly errs by failing to credit it.

But Dr. Teply's testimony does not clear this high bar. For the reasons we have discussed, it was not clear that Dr. Teply opined to a reasonable degree of medical certainty or probability that Thomas would have lived longer had he received the recommended treatment. And even if he did, the main focus of his testimony appeared to be that Thomas was unlikely to live very long. His testimony did not require the compensation court to conclude that Thomas would have lived longer than he did had he received the recommended treatment.

### (d) Dr. LaHolt

Kristine also argues that the compensation court erred by not relying on the expert opinion of Dr. LaHolt. She argues that Dr. LaHolt's opinion—that Thomas' inability to receive the recommended treatment shortened his life expectancy—was both sufficiently definite and not controverted by any other expert opinion. We disagree.

For essentially the same reasons discussed above with respect to Dr. Teply's testimony, the compensation court was not bound to accept the opinions of Dr. LaHolt. Dr. LaHolt provided almost no independent explanation for his conclusion that Thomas' inability to receive the recommended treatment shortened his life expectancy. He said that he agreed with Dr. Teply's opinion that Thomas "may have lived longer" had he received the recommended treatment, but, as we have discussed, that statement was itself insufficiently definite.

### (e) Summary of Causation Evidence

As we have discussed, some of the expert opinions as to whether Thomas would have lived longer had he received the recommended treatment were insufficiently definite. And the compensation court was not obligated to credit other expert testimony on that subject. Accordingly, there is no basis to conclude that the compensation court was clearly wrong when it found that Kristine had not established that Thomas would have lived longer had he received the recommended treatment. See *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024) (factual findings of compensation court have effect of jury verdict and are not reversible unless clearly wrong). Thus, even assuming that Kristine's theory of recovery was valid, the compensation court did not err in denying her claim for death benefits.

### V. CONCLUSION

Because we find that the compensation court did not err in denying Kristine's claim for death benefits, we affirm.

Affirmed.