IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


IN RE ESTATE OF TUNINK V. CONTINENTAL FIRE SPRINKLER CO.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE ESTATE OF GREG TUNINK, DECEASED, BY AND THROUGH ITS
PERSONAL REPRESENTATIVE, KATELYN TUNINK, APPELLANT,

V.

CONTINENTAL FIRE SPRINKLER CO., DOING BUSINESS AS CONTINENTAL ALARM & DETECTION,
EMPLOYER, AND SELF-INSURED C/O SEDGWICK, INSURANCE CARRIER, APPELLEES.


Filed July 22, 2025.    No. A-24-898.


Appeal from the Nebraska Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Laura L. Pattermann, of Gallner & Pattermann, P.C., for appellant.

Jennifer S. Caswell, of Caswell, Panko & Westerhold, L.L.C., for appellees.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

The estate of Greg Tunink appeals the decision of the Nebraska Workers' Compensation Court that determined Greg Tunink's increased depression and anxiety symptoms were unrelated to his work-related accident. For the reasons that follow, we affirm.

## II. BACKGROUND

This is the second time this matter has come before us on appeal. In the underlying proceedings, it was uncontested that Tunink suffered a work-place accident in May 2019 while working for Continental Fire Sprinkler Company (Continental Fire). However, the parties disagreed as to whether his injuries were caused by the workplace accident. Tunink sought

compensation for injuries to his right foot and toes, left foot and toes, nerves in his right lower extremity, and his exacerbated anxiety and depression. After a trial was held in May 2023, the compensation court determined that only his right foot injuries and worsened depression and anxiety were compensable. Continental Fire appealed that decision arguing all of Tunink's injuries were unrelated to the workplace accident. However, Tunink died by suicide shortly after the appeal was filed. His estate was subsequently substituted as the appellee.

On February 6, 2024, we issued an opinion which determined that the compensation court did not err in awarding Tunink disability benefits for the injury sustained to his right foot. See *Tunink v. Continental Fire Sprinkler Co.*, No. A-23-457, 2024 WL 445354 (Neb. App. Feb. 6, 2024) (selected for posting to court website). However, we determined the court's award related to Tunink's depression and anxiety was not a reasoned decision containing facts and conclusions of law pursuant to Workers' Comp. Ct. R. of Proc. 11 (2021) (Rule 11). Therefore, we reversed that portion of the award and remanded the matter to the compensation court "with directions for the court to enter an order based on the existing record, clarifying its finding regarding the causation of Tunink's depression and anxiety and, if necessary, clarifying Continental Fire's economic obligations as a result of Tunink's psychological condition." *Tunink v. Continental Fire Sprinkler Co.*, 2024 WL 445354 at *12.

The compensation court held the remanded hearing on October 28, 2024, and issued an order on November 6. In its order, the court determined there was not any persuasive medical expert opinion connecting Tunink's depression and anxiety to his work-related accident. Tunink's estate now appeals that decision.

1. MEDICAL BACKGROUND

On May 21, 2019, Tunink was working for Continental Fire as a fire alarm technician when he suffered a work-related injury to his right foot. At the time of the accident, Tunink was 46 years old and weighed around 450 pounds. Due to persistent pain in his right foot, he saw a physician twice in May and June. This physician diagnosed him with a sprain in his right foot and ankle and told him he could continue working without restrictions.

In July 2019, Tunink began experiencing pain in his left big toe. He visited his primary care physician, Dr. Heather Obregon, who referred him to a foot and ankle surgeon. The surgeon reported that Tunink was prediabetic and was suffering from neuropathy in his left foot. Due to ongoing pain in his left foot, Tunink returned to Obregon in August 2019. At this appointment, Obregon referred him to a podiatrist and renewed a prescription to treat his mild depression.

From September to November 2019, Tunink saw several doctors due to ongoing issues with his left foot. At various appointments, one doctor diagnosed him with having several stress fractures in his left foot and a possible tear in one of his tendons. A physician's assistant said he had a diabetic foot ulcer that was likely caused by neuropathy. And another doctor diagnosed him with cellulitis of the left foot, left great toe, and left leg from a diabetic ulcer.

On November 5, 2019, Tunink emailed Obregon and requested a prescription to help with his anxiety. In this email, he stated that he no longer wanted to treat his anxiety with alcohol. A nurse responded to the email and told him that Obregon wanted to discuss the risks and benefits of giving him anxiety medication before prescribing it. He was eventually prescribed Xanax to treat his anxiety symptoms.

On November 25, 2019, Tunink began seeing a new primary care physician, Dr. John Harris. At this appointment, Tunink completed a depression screen, which was negative for symptoms of depression. Harris' notes from this appointment reported that Tunink's depression was currently being treated with "medication and/or therapy." To help treat the ongoing problems with his left foot, Harris referred Tunink to a foot and ankle specialist, Dr. Scott Nelson. On December 9, Nelson diagnosed Tunink as suffering from Charcot's joint of the left foot and from a left foot ulcer. At this appointment, Tunink denied struggling with his depression or anxiety. Tunink also denied experiencing symptoms of depression and anxiety during a December 13 appointment with Harris.

Due to ongoing problems with his feet, Tunink continued seeing Nelson from March to September 2020. In one of Nelson's notes from a May appointment, he noted that Tunink denied any recent changes in his depression symptoms. In June, Tunink began having problems with an ulcer that developed on his right foot. After meeting with Nelson, he imposed work restrictions that limited Tunink's amount of walking and standing. Because the condition of his right foot continued to worsen, in September, Nelson recommended that Tunink have the toes on his right foot amputated.

In June 2020, Tunink had another appointment with Harris. A depression screen reported that he was negative for depression symptoms. He also screened negative for depression during a later September appointment. However, Harris' medical notes from that visit listed "depression" under the "Patient['s] Active Problem List."

In September 2020, Tunink was evaluated by Dr. Scott McMullen who diagnosed him as suffering from deformities to both feet. Although McMullen did not believe that amputating his right toes was necessary, he had Tunink wear a brace for several months and recommended further work restrictions that limited his standing and walking. In November, McMullen recommended Tunink have reconstructive surgery on his right foot. This surgery was ultimately performed on December 9. While he healed from the surgery, Tunink took a medical leave of absence from Continental Fire.

On December 7, 2020, 2 days before his surgery, Tunink had an appointment with Harris. Harris' notes from this appointment listed both depression and anxiety amongst Tunink's "Active Problems List."

Over the next several months, Tunink saw McMullen several times to follow up after his surgery. On February 8, 2021, McMullen stated that he was currently unable to return to any type of work that required standing. Several weeks later, on February 22, McMullen reported that Tunink likely required a sedentary or sit-down position that involved minimal standing and walking.

On March 2, 2021, Continental Fire sent Tunink a notice that he was being terminated because he had not been able to return to his duties after his medical leave of absence. On March 8, Tunink filed the petition in the compensation court alleging that he was injured on May 21, 2019, in the course and scope of his employment with Continental Fire and that, as a result, was entitled to compensation. Specifically, Tunink alleged that he suffered injuries to his right foot and toes, left foot and toes, nerves in his right lower extremity, and that the accident worsened his anxiety and depression.

On May 25, 2022, Tunink underwent a psychological evaluation with Dr. Elizabeth Morell as part of an application to receive social security disability benefits. In the "History of Present Illness" section of the report, Morell stated:

His depression currently is triggered by the fact that his career is over and his physical injuries are permanent. He worked hard to get where he was in his career and now it is over. He finds himself moody and grouchy. He indicated that his second wife left him recently as he was snapping at her a lot. . . . He can't mow his lawn and do things around the house anymore like he used to. He finds himself feeling worthless and hopeless at times.

Later in the report, Morell reported that Tunink "had some underlying anxiety" during the assessment. She also stated under the "Prognosis" section of the report that Tunink "appears to struggle with ongoing medical concerns, and this exacerbates the underlying mental health." Ultimately, Morell diagnosed him with major depressive disorder, recurrent, moderate, and unspecified anxiety disorder.

Tunink continued to see McMullen until July 2021. After each visit, McMullen reported that Tunink was still limited to work that did not involve standing or walking. Notably, none of McMullen's medical notes throughout this period reported Tunink experiencing increased symptoms of depression or anxiety.

On August 2, 2022, Harris filled out a check-box form which asked if he agreed with Morell's conclusion that Tunink's "current depression is triggered by the fact he can't do the things that he worked toward in his career." Harris checked the "Yes" box. He also checked a "Yes" box that asked if his opinion was to a reasonable degree of medical certainty.

On August 8, 2022, Tunink returned to Harris with complaints of increased depression symptoms and panic attacks. In his notes, Harris reported: "[Tunink] [s]tates he has had increased anxiety and depression since having work injury. . . . Reports having panic attacks once every few months. Associated symptoms include irritability. Symptoms exacerbated with dealing with work comp and disability." At this appointment, Tunink took a depression screen which indicated he had severe depression. Under the treatment plan section of Harris' notes, he reported, "[P]atient currently treated with medication and/or therapy."

2. TRIAL, ORDER, AND APPEAL

The initial trial on Tunink's petition was held on August 11, 2022. During the trial, both Tunink and his wife, Julie, testified and Tunink's medical records were received into evidence.

Tunink testified that he was a high school graduate, possessed an associate's degree in tool and die manufacturing, and had attended trade school to become a licensed journeyman electrician. Tunink stated that when he was hired at Continental Fire as a fire alarm technician, he was 6 feet, 6 inches tall and weighed 450 pounds. He testified that he was still a similar weight. He denied having any health problems associated with his weight since being hired by Continental Fire. He stated his role as a fire alarm technician required a lot of walking, kneeling, crawling, climbing, and standing, but explained that he had been unable to do those things since the workplace accident.

In addition to his physical ailments, Tunink testified that he was suffering from extreme anxiety and depression because of the accident. While he denied any history of anxiety, Tunink

admitted that he was diagnosed with depression as a sophomore in high school and had been prescribed a low dose of antidepressant medication ever since. He explained that prior to the accident, his depression had been controlled by this medication. However, he claimed his depression increased after the accident and that he developed anxiety. He stated he was constantly stressed, irritable, and concerned about his future. He described how he felt worthless and helpless because he was unable to work or perform basic tasks without assistance.

His wife, Julie, then testified. At the time of the first trial, they had been married for just over a year. Julie described how Tunink's injuries prohibited him from helping around the house, mowing the lawn, going to the grocery store, and transporting himself. She stated that Tunink's inability to complete those tasks negatively affected his mood. She also described how his constant pain and irritability impacted their relationship. She said they used to goof around with one another but had stopped after he was injured. Additionally, Tunink began snapping at her after the accident, which led to them separating for several months.

On May 25, 2023, the compensation court issued an order that determined only Tunink's right foot injury and increased anxiety and depression were compensable. Accordingly, the court ordered Continental Fire to pay for all of Tunink's past and future medical expenses related to his right foot injury and for his anxiety and depression medications.

On June 15, 2023, Continental Fire appealed the compensation court's decision. However, on August 2, before a decision could be rendered, Tunink died by suicide. The action was then revived and Tunink's estate was substituted as the appellee. On February 6, 2024, we issued an opinion that upheld the portion of the award that compensated Tunink for the injuries to his right foot but reversed the portion that ordered Continental Fire to pay for his depression and anxiety medications. *Tunink v. Continental Fire Sprinkler Co.*, No. A-23-457, 2024 WL 445354 (Neb. App. Feb. 6, 2024) (selected for posting to court website). In remanding the matter for further proceedings, we held:

> Ultimately, we conclude that the compensation court's award as to Tunink's depression and anxiety is confusing and unclear. As such, we vacate that portion of the award and remand the cause for further proceedings. On remand, the compensation court shall, inter alia, enter an order based on the existing record, clarifying its finding regarding the causation of Tunink's depression and anxiety and, if necessary, clarifying Continental Fire's economic obligations as a result of Tunink's psychological condition.

*Id.* at *10.

### 3. REMANDED HEARING AND ORDER

A remanded hearing occurred on October 28, 2024. Because the judge who presided over the previous trial had retired, the hearing occurred before a new judge. The evidence included the transcript from the prior trial, Tunink's medical records, and further testimony from Julie.

Although we note that we ordered the compensation court to enter a new order based on the existing record, Julie's testimony did not differ much from the first trial. At the time of Tunink's death, Julie had been married to him for 2½ years. She said that she lived with him almost the entire time but moved out for several months sometime between March and May 2022. She explained how Tunink was no longer himself after the accident and was "emotionally wrecked."

He had no self-worth and was embarrassed that he could not work or do normal activities. Julie explained how Tunink could only stand for around 10 minutes at a time and had to sit for 20 minutes afterward. This prevented him from doing things he used to do like mowing the yard, shopping for groceries, dancing with her, and socializing with others. Julie said that he often complained about being disabled for the rest of his life and did not know what the future held. Julie stated that Tunink was not depressed before the injury and articulated her belief that his change in behavior was caused by his work-related accident.

On November 6, 2024, the compensation court issued an order which determined there was insufficient evidence to prove a causal link between Tunink's depression and anxiety and the workplace accident. The court first determined that Harris' treatment records failed to connect his mental health symptoms to the physical injuries he sustained from the May 2019 accident. It noted that the only records of depression in Harris' medical notes prior to the August 2022 appointment was the listing of depression in Tunink's medical history, Tunink's denial of experiencing depression symptoms in December 2019, and two negative depression screens from June and September 2020. The court then discussed the August 2022 appointment where Tunink complained of increased depression and anxiety symptoms and tested for severe depression on the depression screen. The order stated that although Harris noted Tunink's complaints in the "History Section" of his report, he did not provide any background information, detailed testing, or discussion on how he was treating Tunink's depression and anxiety. Without this sort of information, the court determined that Harris never treated Tunink's depression. It then explained that because Harris never thoroughly examined Tunink's depression, he was unable to reach a "firm conclusion" as to the cause of his symptoms to a reasonable degree of medical certainty. As a result, the court essentially determined Harris' medical opinion as to Tunink's depression and anxiety was not credible.

The court then discussed Morell's report. It articulated how her report explained Tunink's history of depression, listed several non-work-related stressors that were affecting his mental health, and diagnosed him with major depressive disorder and an unspecified anxiety disorder. The court then stated:

> Morell recorded the following history from [Tunink], "[Tunink] reported that his current depression is triggered by the fact that he can't do the things that he worked toward in his career." This statement suffers the same frailty as the history statements in Harris's records: it is not a diagnosis or an opinion that the statement is true, but merely a reiteration of what [Tunink] said. Further, "triggering" depression is not the same as causing depression. Obviously, [Tunink] had been treated for depression for many years before the work accident.

Because the court took Morell's comments to only be a recitation of what Tunink told her and not as a diagnosis, it ultimately determined that she never opined on the cause of his depression and anxiety or gave an authoritative opinion that connected the onset of his symptoms to his work injury. Without such an opinion, the court concluded there was not a legally sufficient causal connection between Tunink's mental health issues and the workplace accident.

The Court next discussed how there was evidence of several other non-work-related stressors in Tunink's life. Specifically, it noted his strained relationship with Julie and his children

from his first marriage and the stress he had from the litigation process. In noting that this stress was not compensable, the court stated that "given the context of numerous other non-work related stressors in [Tunink's] life, something more than mere historical recital in a medical notation is needed to persuade the fact finder that the increased symptoms are directly associated with the work accident."

Tunink's estate now appeals the compensation court's decision.

## III. ASSIGNMENTS OF ERROR

Restated and consolidated, Tunink's estate assigns that the compensation court's decision that Tunink's depression and anxiety were not aggravated or caused by his work-related accident was clearly wrong and not supported by substantial evidence.

## IV. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a compensation court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Averill v. Omaha Public Schools*, 33 Neb. App. 272, 14 N.W.3d 556 (2024).

On appellate review, the factual findings made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024). In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id.*

## V. ANALYSIS

Tunink's estate makes three arguments as to why the compensation court's decision should be reversed. First, it asserts that certain findings of fact were clearly wrong and do not support the court's order. Second, it argues the court applied an incorrect standard to determine causation. Third, it asserts the court utilized an overly burdensome standard to determine the sufficiency of the experts' opinions.

### 1. FINDINGS OF FACT

Tunink's estate first argues that certain findings of fact by the compensation court were clearly wrong and not supported by substantial evidence. Specifically, it takes issue with the court (1) referencing the witnesses' demeanor in its assessment of their credibility; (2) focusing on the period before Tunink lost his job when he did not complain about his worsening depression and anxiety; and (3) determining that Harris never treated Tunink for depression.

### (a) Reference to Witnesses' Demeanor

Tunink's estate first argues the court's factual findings were clearly wrong because its order stated that it evaluated the witnesses' demeanor in assessing their credibility. It takes issue with

this because the judge who oversaw the hearing on remand was unable to evaluate Tunink's demeanor. Tunink died by suicide prior to the remanded hearing and, therefore, the new judge was limited to a transcript of his prior testimony.

We do not find this argument persuasive. As the trier of fact, the compensation court is the sole judge of credibility of witnesses and weight to be given their testimony. *Ventura Duenas v. Papillion Foods*, 32 Neb. App. 899, 6 N.W.3d 807 (2024). While we agree that the judge on remand was in no position to evaluate Tunink's demeanor while testifying, it was still able to judge the credibility of his prior testimony. As articulated in the court's order, it relied on numerous factors in judging the credibility of the witnesses:

> Resolution of the issues also involved weighing the credibility of the witnesses and balancing conflicting circumstantial evidence. In assessing the credibility of the witnesses the Court considered factors such as the respective interests of the witnesses who appeared at trial; the reasonableness of the statements of the witnesses; the general demeanor of the witnesses; the apparent fairness exhibited by the witnesses upon cross-examination; and, the extent to which the testimony of the witnesses was corroborated, or not, by written contemporaneous records – medical or otherwise. Important in this assessment is whether information was omitted or falsified, ambiguity in how information was presented, and any strategic evasion away from sensitive information.

The court's order makes it clear that its focus on the witnesses' demeanor was only a portion of its credibility assessment. Therefore, we determine the court did not err in stating that it considered the witnesses' demeanor in evaluating their credibility.

### (b) Time Period Utilized

Tunink's estate next argues the court's factual findings were clearly wrong and not supported by substantial evidence because it utilized "the wrong time frame for examining [Tunink's] Denial of Depression." Tunink's estate generally asserts the court erred by not focusing on the period after Tunink lost his job when his depression and anxiety began to worsen.

We determine this argument misconstrues the court's analysis, reasoning, and conclusion. A review of the court's order demonstrates that it evaluated more than just the period when Tunink did not complain of increased symptoms of depression. While the court cited numerous records prior to Tunink losing his job to illustrate that there were times following the accident when Tunink did not complain of depression, it also discussed the medical reports created after he lost his job. Specifically, the court analyzed records from Tunink's more recent August 2022 visit with Harris and his May 2022 psychological evaluation with Morell. It then explained how those records failed to demonstrate a causal connection between Tunink's depression and the workplace accident. Because the court's decision was not limited to the time before Tunink reported worsening symptoms, we determine this argument fails.

### (c) Harris' Treatment of Tunink's Depression

Tunink's estate next argues the court's factual findings were clearly wrong and not supported by substantial evidence because it failed to recognize that Harris treated Tunink's depression and opined on the causation of his depression. Tunink's estate argues at length that the

court's determination that Harris never treated Tunink's depression (1) was inaccurate; (2) improperly characterized Harris' role as Tunink's primary care physician; and (3) led to the court discounting Harris' check-box form that indicated he agreed with Morell's evaluation.

We determine these arguments are misplaced. The compensation court's discussion regarding Harris' treatment—or lack thereof—of Tunink's depression was within the context of assessing Harris' credibility to opine on the cause of his symptoms to a reasonable degree of medical certainty. Although the court concluded Harris never treated Tunink's depression when he prescribed him medication to treat his depression, we determine the court's conclusion went to its evaluation of Harris' credibility. The compensation court is the sole judge of the credibility and weight to be given medical opinions. *Yost v. Davita, Inc.*, 23 Neb. App. 482, 873 N.W.2d 435 (2015). The compensation court chose to find Harris' medical opinion not to be credible because his treatment records lacked relevant background information, detailed tests, or diagnoses concerning Tunink's depression. We do not reweigh that decision on appeal.

Further, it is unclear how a different finding as to whether Harris treated Tunink's depression would have changed the court's conclusion that there was no causal connection between his mental health symptoms and the workplace accident. After the court determined Harris did not treat Tunink's depression, it went on to articulate how Harris never offered an opinion as to the cause of his worsening symptoms. The court specifically stated: "Unfortunately for [Tunink], there is no reference in Harris' records that [his] work injury was the source of [his] anxiety and depression. . . . Harris presents no opinion nor gives any signal that [Tunink's] mental health issues [were] related to the work injury." And later in the opinion it articulated why Harris' medical notes and check-box form were unpersuasive:

> [G]iven the context of numerous other non-work-related stressors in [Tunink's] life, something more than mere historical recital in a medical notation is needed to persuade the fact finder that the increased symptoms are directly associated with the work accident.
>
> [Tunink's estate's] use of a check-box form is, likewise, not persuasive in this environment. . . . The Court does not mean to suggest in any way that questionnaires such as the one offered by [Tunink's estate] have no place in the litigation arena but, rather, that there should be a selective use of that form of evidence. In other words, when an issue is central to the case and is in serious dispute or contention, something more than a check mark is likely needed.

Accordingly, we conclude the arguments presented by Tunink's estate fail. Even if we were to assume the court erred in determining that Harris did not treat Tunink's depression, it would not meaningfully alter the court's subsequent finding that none of Harris' records established a causal link between Tunink's mental health symptoms and the workplace accident.

## 2. STANDARD TO DETERMINE CAUSATION

Tunink's estate next argues the compensation court's decision should be reversed because it applied an incorrect standard to determine causation when a preexisting condition is involved. It cites the following proposition from *Spangler v. State*, 233 Neb. 790, 795, 448 N.W.2d 145, 150 (1989) (internal citations omitted):

To sustain an award in a workers' compensation case involving a preexisting disease or condition, it is sufficient to show that the injury resulting from an accident arising out of and in the course of employment and the preexisting disease or condition combined to produce disability or that the employment injury aggravated, accelerated, or inflamed the preexisting condition.

Tunink's estate then cites the portion of the compensation court's order which provides: Morell recorded the following history from Tunink, "[Tunink] reported that his current depression is triggered by the fact that he can't do the things that he worked toward in his career." This statement suffers the same frailty as the history statements in Harris' records: it is not a diagnosis or an opinion that the statement is true, but merely a reiteration of what [Tunink] said. Further, "triggering" depression is not the same as causing depression.

Tunink's estate focuses on the last sentence to argue that the court erred because "triggering" does have the same meaning as "aggravating."

This argument misconstrues the court's order. The court's conclusion did not rely on its distinction between "triggering" and "aggravating." Immediately after it acknowledged Tunink told Morell that his depression was "triggered by the fact that he can't do things that he worked toward in his career," the court explained how that comment was not a diagnosis or an opinion. It then determined that without a clear expert medical opinion as to what caused Tunink's exacerbated symptoms, there was not a legally sufficient causal connection between his symptoms and the workplace accident. Accordingly, we determine the court did not apply an incorrect standard when it distinguished between "triggering" and "aggravating." The court's conclusion clearly relied on the lack of expert medical opinion as to what caused Tunink's worsening depression and anxiety. Therefore, we determine this argument fails.

### 3. SUFFICIENCY OF EXPERT'S OPINION TO PROVE CAUSATION

Tunink's estate next argues the compensation court's decision should be reversed because it utilized an overly burdensome standard when it determined that neither Harris nor Morell offered an opinion regarding the cause of Tunink's worsening depression and anxiety. It essentially argues the court misconstrued both Morell's report and Harris' check-box form when it determined that neither expert offered an opinion as to causation.

The law on causation in workers' compensation cases is well settled. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024). A preexisting disease and an aggravation of that disease may combine to produce a compensable injury. *Parks v. Hy-Vee*, 307 Neb. 927, 951 N.W.2d 504 (2020). To be compensable, a subsequent injury or aggravation related to the primary injury must be a direct and natural result of the work accident. *Id.* If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Prinz v. Omaha Operations, supra.* Although a claimant's medical expert does not have to couch his or her opinion in the magic words "reasonable medical certainty" or "reasonable probability," the opinion must be sufficient to establish the crucial causal link between the claimant's injuries and the accident occurring in the course and scope of the claimant's employment. *Id.*

The determination of causation is ordinarily a matter for the trier of fact. *Id.* Moreover, it is the role of the compensation court as the trier of fact to determine which, if any, expert witnesses to believe. *Id.* If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.* Importantly, an appellate court examines the sufficiency of a medical expert's statements from the expert's entire opinion and the record as a whole. *Id.*

Tunink's estate cites multiple areas of Morell's report where she allegedly opined that his workplace accident was the cause of his exacerbated depression and anxiety. It first cites the "History of Present Illness" section where she stated:

> In terms of mental health issues, [Tunink] reported that he has experienced depression and anxiety throughout much of his life. He described how his symptoms began following a contentious divorce. He struggled with his relationship with his children following the divorce. His depression currently is triggered by the fact that his career is over and his physical injuries are permanent. He worked hard to get where he was in his career and now it is over.

We determine the compensation court was not clearly wrong when it determined these comments failed to prove causation. As articulated by the compensation court, this portion of Morell's report only repeated what Tunink told her. As such, it does not constitute a diagnosis or medical opinion about the cause of his symptoms. We also note that nothing in this section clearly articulates that Tunink's workplace accident was the cause of his worsening symptoms. Instead, it only states his symptoms were triggered by the end of his career and the realization that his injuries were permanent. While one may reason that those feelings were connected to his injuries, Morell made no distinction between the injuries to his right foot, which were found to be related to his workplace accident, and the injuries to his left foot which were determined to be unconnected.

Tunink's estate next cites the "Prognosis" portion of Morell's report, which states:

> Prognosis is guarded for [Tunink] from a mental health point of view. He experienced depression and anxiety. He continues to take medication and participate in therapy. He appears to struggle with ongoing medical concerns, and this exacerbates the underlying mental health. His medical concerns would be better evaluated by a medical doctor.

This section similarly does not establish a causal connection between Tunink's workplace injury and his worsening depression and anxiety. While it states that his "ongoing medical concerns" exacerbated his mental health issues, it does not specifically identify which medical concerns were responsible. Prior to his death, Tunink was suffering from a multitude of medical conditions. Of those conditions, the compensation court determined that only the injuries to his right foot were related to his workplace accident. Because Morell did not specifically identify the injuries he sustained from the workplace accident as the cause of his worsening depression and anxiety, her report fails to sufficiently connect his symptoms to the accident to a reasonable degree of medical certainty.

Harris' check-box form is equally insufficient. On that form, Harris simply marked "Yes" to the question of whether he agreed with Morell's report that indicated Tunink's "current

depression [was] triggered by the fact he can't do the things that he worked toward in his career." We first note that this question misrepresented Tunink's statement to Morell as Morell's medical opinion. Beyond that, because we have already determined that Morell's report failed to establish causation to a reasonable degree of medical certainty, we are unable to conclude that a form merely agreeing with her report proves causation.

In applying the requisite standard where we consider the evidence in the light most favorable to Continental Fire and resolve every controverted fact in its favor, we cannot say the compensation court was clearly wrong in finding there was insufficient expert medical opinion to prove causation. Nothing from Morell's report, Harris' medical notes, or Harris' check-box form sufficiently demonstrates a causal connection between Tunink's increased depression and anxiety symptoms and the workplace accident.

## VI. CONCLUSION

We determine Tunink's arguments concerning the compensation court's findings of fact fail. We also determine the court did not apply an incorrect standard to determine causation and did not apply an overly burdensome standard to determine the sufficiency of Morell and Harris' expert medical opinions. For these reasons, we affirm the judgment of the compensation court.

AFFIRMED.